ISAAC V. BROKAW, Respondent, *v.* ELLEN DUFFY, Appellant.

1. VENDOR AND PURCHASER — WHEN PURCHASER ENTITLED TO RECOVER SUM PAID ON CONTRACT FOR SALE OF LAND. Where the vendor of real estate under an executory contract is unable to convey a marketable title free from doubtful questions of fact or law at the time provided by the contract, the purchaser is entitled to recover the amount paid thereon in advance and for examination of the title, and a formal tender or demand on his part is not necessary in order to enable him to maintain the action.

2. WHEN PURCHASER IS JUSTIFIED IN REJECTING TITLE AS UNMARKETABLE. A title is not marketable if subject to a serious question of fact which might be decided in different ways by different tribunals, and where a purchaser upon investigation has ascertained facts sufficient to constitute actual notice to him of the probable invalidity of the vendor's title, and that if he accepts it he will be called upon to defend it, he is justified in rejecting it as unmarketable. Authorities upon the subject of unmarketable titles collated.

3. ACTION TO RECOVER SUM PAID ON EXECUTORY CONTRACT FOR SALE OF LAND — FACTS CONSTITUTING NOTICE TO PURCHASER OF THE PROBABLE INVALIDITY OF VENDOR'S TITLE. In an action by the purchaser of land under an executory contract to recover a sum paid thereon in advance and for examination of the title, in which the issue was whether the vendor had a marketable title, where it appears that the plaintiff upon an investigation of the title had ascertained from an examination of the records of an inquisition in lunacy that a jury had found the vendor's grantor insane at the time he conveyed to her — that a motion to confirm the verdict was denied and the proceeding dismissed because the commissioner discredited some of the medical evidence — that leave was given to apply for a new commission, which was denied because the alleged incompetent was beyond the jurisdiction of the court, although the pendency of such proceeding had been canceled of record and it had been filed in a special proceeding and not in an action, the facts constitute such actual and sufficient notice to him of the probable invalidity of the defendant's title as will justify him in rejecting it as unmarketable because he might be required to defend it upon the ground that her grantor was insane; especially when it also appears that he had been warned by persons in opposition to her that if he accepted such title he would have to defend it; and when the defendant fails to show by proof which would be satisfactory to a reasonable person that her title was unimpaired by the alleged defects, the plaintiff is not required to accept the proffered title, and may recover back the money paid upon the contract.

4. EVIDENCE — WHEN FINDING WHETHER OF FACT OR OF LAW IS ERRONEOUS. A finding in such an action that there was no evidence of the insanity of the defendant's grantor at the time he deeded the property to her, and not enough to create a reasonable doubt upon the subject, is erroneous whether viewed as a finding of fact or as a conclusion of law, since there was enough competent evidence not only to justify but to require a finding that there was reasonable doubt as to his sanity.

5. ADMISSIBILITY OF EVIDENCE CONSTITUTING ADMISSION OF INVALIDITY OF TITLE. Upon the trial of such an action the exclusion of proof tending to show that the defendant herself regarded the deed as invalid, and for that reason voluntarily surrendered three-fourths of the property which it purported to convey, is erroneous, since it constituted a practical admission on her part that the title which she claimed to the property when the contract between the parties was made was not only unmarketable, but invalid.

*Brokaw* v. *Duffy*, 36 App. Div. 147, affirmed.

(Argued November 26, 1900; decided January 22, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered Feb-

ruary 2, 1899, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term without a jury, and granting a new trial.

This action was brought by a vendee of real estate, under an executory contract, to recover the amount paid thereon in advance and for examination of title, upon the ground that the vendor could not fulfill her contract to convey because her title was not marketable.

By a contract dated November 27, 1891, the defendant agreed, in consideration of $14,000, of which $500 was paid down, to convey the premises in question to the plaintiff by "a proper deed containing a general warranty and the usual full covenants for the conveying and assuring to him the fee simple of the said premises free from all incumbrances and restrictions." The plaintiff was ready to fulfill at the time fixed for performance, but the defendant could not perform, because there was evidence of record tending to prove the insanity of her grantor, one Bernard McKenna, at the time of his conveyance to her, and for the further reason that the heirs at law of said McKenna had given notice of their intention to cause the conveyance to the defendant to be set aside on account of such insanity.

In the decision of the trial judge, which dismissed the complaint, was the following: "It appeared on the trial that in examining the title plaintiff's attorney found a *lis pendens* filed in a proceeding entitled, 'In the Matter of Bernard McKenna, an alleged lunatic.' That proceeding had resulted in a finding by the sheriff's jury that Bernard McKenna was a lunatic and of unsound mind. This finding was vacated and set aside by order of the court with leave to apply for a new commission. An application for a new commission was made and denied and the *lis pendens* was ordered to be canceled, and thereupon was canceled. When the *lis pendens* was canceled it ceased to be a statutory notice to purchasers, and plaintiff's attorney in searching the title was not obliged to search for the papers in the proceeding. The contingency that a new commission might be applied for at a future time

was of no importance. The plaintiff was bound to point out his objections to the title and give proof tending to establish them, or to create such a doubt in respect thereto as to render the title unmarketable. The record title was perfect, and it was, therefore, incumbent upon the plaintiff to show by satisfactory evidence that the title was defective by proof outside of the record. This burden he has not sustained. *There is no evidence before the court that Bernard McKenna was insane at the time he deeded this property to the defendant, nor sufficient to create a reasonable doubt as to his sanity at that time.* The mere fact that an attorney notified plaintiff that he had been informed that McKenna was insane and that suit would be brought to set aside the deed in case he completed his purchase, is not sufficient."

The plaintiff excepted to various portions of the decision, and among the rest to the part printed in italics, as well as to the direction for judgment dismissing the complaint upon the merits, with costs.

The judgment entered accordingly was reversed by the Appellate Division by an order which did not state that the reversal was upon the facts. The defendant stipulated and appealed to this court.

*Michael J. Scanlan* for appellant. The defendant had a good title to the premises in question, and the title tendered to plaintiff should not have been rejected. ( *Valentine* v. *Austin,* 124 N. Y. 400 ; *Page* v. *Waring,* 76 N. Y. 463.) The contingency that some new proceeding would be instituted to have Bernard McKenna declared a lunatic did not operate to make the title to the property bad or unmarketable. (*Haffey* v. *Lynch,* 143 N. Y. 241 ; *Miller* v. *McGuckin,* 15 Abb. [N. C.] 204, 227, 228 ; *Greenblatt* v. *Hermann,* 144 N. Y. 13 ; *Jay* v. *Wilson,* 91 Hun, 391.) The plaintiff's claim that his attorney's investigations outside of the record resulted in actual notice to him is untenable. (*F. A. Society* v. *Brown,* 147 Mass. 296 ; *Nickerson* v. *Loud,* 115 Mass. 94 ; *Green* v. *Pulsdorf,* 2 Beav. 70.) If the plaintiff had taken a deed, as

required by the contract, that deed could not afterwards be set aside. (*M. L. Ins. Co.* v. *Hunt,* 79 N. Y. 541 ; *Delafield* v. *Parish,* 25 N. Y. 9.) An agreement made between defendant and other persons not parties to this action after the breach of the contract set forth in the complaint was clearly inadmissible in evidence. (*Simis* v. *McElroy,* 12 App. Div. 434.)

*M. S. Thompson* for respondent. The proof that a cloud existed upon the title of the defendant was abundant. (*Fleming* v. *Burnhan,* 100 N. Y. 1 ; *Greenblatt* v. *Hermann,* 144 N. Y. 13 ; *Jordan* v. *Poillon,* 77 N. Y. 518 ; *McPherson* v. *Schade,* 149 N. Y. 16 ; *Vought* v. *Williams,* 120 N. Y. 253 ; *Irving* v. *Campbell,* 121 N. Y. 353 ; *Shriver* v. *Shriver,* 86 N. Y. 584.) The fact that the notice of pendency of action was canceled is immaterial if the purchaser had actual notice. (Bispham's Prin. of Eq. [5th ed.] 379, § 268.) The testimony in the lunacy proceedings having been admitted in evidence, due weight must be given to it in the decision of this case. (*Van Deusen* v. *Sweet,* 51 N. Y. 378.)

VANN, J. The plaintiff was entitled to a marketable title free from doubtful questions of fact or law. Unless the defendant could convey such a title, it was impossible for her to perform her contract and the plaintiff was entitled to recover the money paid thereon and the expenses incurred by him in examining the title. " If the vendor of real estate, under an executory contract, is unable to perform on his part at the time provided by the contract, a formal tender or demand on the part of the vendee is not necessary in order to enable him to maintain an action to recover the money paid on the contract or for damages." (*Ziehen* v. *Smith,* 148 N. Y. 558, 562, and cases cited.)

Upon the trial there was no conflict in the evidence, and the following facts appeared without dispute : The defendant's grantor was Bernard McKenna, her brother, who was nearly 90 years of age on the 22nd of May, 1884, when, in consideration of one dollar, he conveyed to her four different

parcels of land in the city of New York, including the premises in question. Both grantor and grantee resided in Ireland at the date of the conveyance, but before that the former had lived in this country for many years.

Shortly after the plaintiff entered into the contract with Mrs. Duffy he procured a search upon the premises and found a notice of pendency that referred to a record of an inquisition in lunacy, which disclosed that on the 24th of July, 1885, Mary J. McShane, a niece and heir at law of said McKenna, filed a petition in lunacy alleging that he then was and for about ten years had been insane and incompetent to take care of his estate. The petition referred to the conveyance of May 22nd, 1884, from him to Mrs. Duffy, and alleged that, at the date thereof, he was insane and wholly under her influence and control. A commission was issued, a trial had, and on the 1st of December, 1887, the jury found that "Bernard McKenna is a lunatic and of unsound mind, and that he has been in the same state of lunacy since October 26th, 1881." Attached to the inquisition was the evidence upon which it was founded. Four lay witnesses, called by the petitioner, testified to irrational acts and declarations on the part of McKenna continuing from 1881 until the trial, and three expert witnesses, called by her, testified, one in answer to a hypothetical question, and the others as the result of personal examinations, that said McKenna was of unsound mind and incapable of managing his estate.

One of the lay witnesses who had known McKenna for twenty-five years while he lived in this country, saw him five times in the spring of 1885, when he was living in Ireland with Mrs. Duffy. He testified that he called upon him and said, "How do you do, Mr. McKenna?" and that McKenna, pulling at his nose, replied: "I am not Mr. McKenna; Mr. McKenna is dead; I am not Mr. McKenna at all." After a while the witness said to him, "Mr. McKenna, you know you are McKenna," and he answered, "No, I am dead years ago; my face is dead; my head is dead; I am all dead." He then talked sensibly for a few minutes, but soon said: "What

brought you to this country?" and the witness replied, "I came here to see you." He then said: "Now I will be dead to-morrow; did you bring that flagstone from Thirty-fifth street to make a head stone for me; did you come without it?" Occasionally he would talk lucidly about something that transpired years before in America, but would soon break out as follows: "I am not Mr. McKenna. Sure I have got nothing in New York * * * sure I have got nothing in America; I never was in America." After a while Mrs. Duffy entered the room and he said to her: "Bad luck to you; you have robbed me, you old robber."

Four days later this witness called upon him again, but "he did not know that I ever was there at all. * * * He told me he never saw me; he did not know me; * * * he said he was not Mr. McKenna; Mr. McKenna was dead; he was at one time Mr. McKenna, but not now. He said he had never seen me; * * * he said he had no nose. When Mrs. Duffy brought him food he said, 'I won't eat it; I don't eat nothing; I am dead; I want nothing to eat; * * * Oh, I was a bad man, wasn't I? The unfortunate creature, to come here; to be placed here, a poor man without anything to eat or anything to wear. Oh, my, ain't I a foolish man?' Mrs. Duffy went up to him, stamped her foot and said, 'shut up, you musn't talk that way.' He would cry and talk about his property in New York, and then in a little while he would say, 'I never had any property; I am not Barney McKenna at all; I will be dead in the morning; bury me outside.'" This conversation was partly monologue and partly dialogue, and each time that the witness saw him he acted and talked in the same way.

Four lay witnesses, including Mrs. Duffy, and five experts, gave evidence tending to show that McKenna had always been sane and capable of doing business.

A motion made to confirm the verdict of the jury was denied and the proceeding dismissed, with leave to apply for a new commission, solely upon the ground that the commissioner discredited some of the medical evidence in his charge

to the jury. The court held that the evidence was sufficient " to make out a case." An application for a new commission was denied upon the ground that McKenna was beyond the jurisdiction of the court, and " that the question as to his sanity should be tried in the country where he resides, and in which he can be personally seen and heard in his defense."

After thus learning the facts stated in the inquisition record, the plaintiff, through his counsel, inquired of the attorney who conducted the proceeding for the heirs at law, and was informed by him " that they had undoubted evidence of Bernard McKenna's insanity ; that he was still living at that time, but was very advanced in years, being ninety years of age or thereabouts, and that as soon as Mr. McKenna died he, on behalf of the heirs at law, would commence proceedings to set aside the deed from Bernard McKenna to Ellen Duffy on the ground that, at the time of its execution, Bernard McKenna was a lunatic, and further, he threatened that if we took title we would do so at our own risk."

The plaintiff's counsel testified that at the time fixed for closing the contract he called upon Mr. Quinn, who acted for the defendant, told him of these proceedings, and said that he could not advise the plaintiff, who was present prepared to take a deed, to accept the title under the circumstances, to which Mr. Quinn made no reply. No attempt was then, or at any time, made by Mrs. Duffy, or her counsel, to deny or explain the facts upon which the plaintiff relied in rejecting the title. Those facts were wholly undisputed, for the defendant simply put in some documentary evidence and rested without swearing a witness.

The issue raised by the pleadings and tried before the court was whether Mrs. Duffy had a marketable title. Her title was not marketable because it was subject to a serious question of fact which might be decided in different ways by different tribunals. The plaintiff was not obliged to accept a title which was under the shadow of an impending lawsuit. " A title open to a reasonable doubt is not a marketable title. The court cannot make it such by passing upon an objection depending

on a disputed question of fact, or a doubtful question of law, in the absence of the party in whom the outstanding right was vested. He would not be bound by the adjudication, and could raise the same question in a new proceeding. The cloud upon the purchaser's title would remain, although the court undertook to decide the fact or the law, whatever moral weight the decision might have. It would especially be unjust to compel a purchaser to take a title the validity of which depended upon a question of fact, where the facts presented upon the application might be changed on a new inquiry or are open to opposing inferences." (*Fleming* v. *Burnham*, 100 N. Y. 1, 10.)

"A purchaser should not be left, upon receiving a deed, to the uncertainty of a doubtful title or the hazard of a contest with other parties which may seriously affect the value of the property, if he desires to sell the same." (*Jordan* v. *Poillon*, 77 N. Y. 518–521.) He "ought not to be compelled to take property, the possession of which he may be obliged to defend by litigation." (*McPherson* v. *Schade*, 149 N. Y. 16, 21.) "He should have a title that will enable him to hold his land free from probable claim by another, and one that, if he wishes to sell, would be reasonably free from any doubt which would interfere with its market value." (*Heller* v. *Cohen*, 154 N. Y. 299, 306; *Vought* v. *Williams*, 120 N. Y. 253, 257.) "It has often been held that a title is not marketable when it exposes the party holding it to litigation." (*Swayne* v. *Lyon*, 67 Penn. St. 436, quoted with approval in *Moore* v. *Williams*, 115 N. Y. 586, 592.) "The title tendered need not in fact be bad in order to relieve him from his purchase, but it must either be defective in fact or so clouded by apparent defects, either in the record or by proof outside of the record, that prudent men, knowing the facts, would hesitate to take it." (*Greenblatt* v. *Hermann*, 144 N. Y. 13, 20.) The distinction which once prevailed as to marketable titles between courts of law and equity no longer exists, and an action at law by the vendee to recover back purchase money paid may be based upon the same ground that

would justify a court of equity in refusing to compel him to accept the title. (*Moore* v. *Williams*, 115 N. Y. 586.)

Even if the plaintiff would have been justified in disregarding the notice of pendency because it had been canceled of record, as well as for the reason that it was filed in a special proceeding and not in an action, still he had the right to examine the inquisition record. (*Valentine* v. *Austin*, 124 N. Y. 400.) If not obliged to make further investigation, it was his privilege to do so, as one may take more care in transacting business than is required by law. The plaintiff saw fit to make thorough inquiry, as was his right, and having done so he is chargeable with whatever facts he discovered. Those facts were not constructive, but actual notice to him, which he could not disregard in safety. The defect discovered is none the less a defect because he would not have found it but for the exercise of unusual diligence. It left his title open to attack upon a question of fact and he knew there was evidence which would authorize a finding that Mr. McKenna was insane when he conveyed to Mrs. Duffy. He did not act upon rumor, but mainly upon facts stated by seven witnesses under oath. He was warned by the persons opposed in interest to Mrs. Duffy that if he accepted the title he would have to defend it. He was informed that those persons could produce convincing evidence that McKenna was insane when he gave all his property to his sister. He knew that this was not an empty threat, but was based on substantial facts, for he also knew that there was evidence on file, taken in a judicial proceeding, which would not only warrant a jury in finding that this was true, but that a jury, acting upon such evidence, had once so found; yet his announcement that he should reject the title for these reasons met with neither explanation nor denial. His action was not based on a mere possibility, but on a reasonable probability, that the title could and would be successfully attacked. The defendant could not correct the defect, and she did not offer to.

We are not called upon to determine whether the defend-

ant could convey a marketable title to a *bona fide* purchaser who had no notice of the alleged insanity of her grantor, but whether she could convey a title which was marketable as to the plaintiff while he possessed the knowledge acquired by his investigation. In determining that question, the inquiry is not whether the defendant's grantor was or probably was insane, but whether the plaintiff received such notice of the probable invalidity of the defendant's title as to justify him in rejecting it as unmarketable, because he might be required to defend it upon the ground that her grantor was insane. While it may be that the lunacy proceedings which came to the plaintiff's knowledge and were admitted in evidence upon the trial were insufficient to establish the invalidity of the defendant's title, they were at least sufficient notice to the plaintiff to put a reasonably prudent man upon inquiry as to its validity. They constituted notice that the defendant's title was questioned and in doubt, and that there was existing proof which would justify the conclusion that it was invalid as against him. This notice could not be safely disregarded by a purchaser, as it directly involved the validity of the title. Under these circumstances, the defendant was bound to show by proof, which would be satisfactory to a reasonable person, that her title was unimpaired by the alleged defects of which the plaintiff had notice, and when she omitted and neglected to make any explanation the plaintiff was not required to accept the proffered title, but might recover the money paid upon the contract.

While there was a conflict of evidence in the lunacy proceeding, there was no conflict of evidence on the trial of this action, and no evidence to warrant any finding adverse to the plaintiff, who was not obliged to show that McKenna was insane, but that there was enough evidence in existence, which, uncontradicted and unexplained, would create a reasonable doubt as to his sanity in the mind of a reasonable man. The court might find him sane, or might conclude that there was a preponderance of evidence to that effect, but that would not make the title marketable, provided there was evidence,

which, if believed by a jury upon another trial, with different
parties before the court, would warrant the conclusion that he
was insane when he conveyed to his sister. · The learned trial
judge found that there was no evidence of insanity, and not
enough to create a· reasonable doubt upon the subject. This
covered the controlling issue as to the existence of any evi-
dence, which, when fairly considered, could establish a reason-
able doubt. It was either a finding of fact, or a conclusion of
law. If the former, it was without any evidence to support
it, and was, hence, subject to exception as an error of law.
(*Otten* v. *Manhattan Ry. Co.*, 150 N. Y. 395; *National
Harrow Co.* v. *Bement*, 163 N. Y. 505.) If the latter, it was
reversible error, because it held as matter of law that there
was no evidence on the vital question, when there was enough
competent evidence, not only to justify, but to require a find-
ing that there was a reasonable doubt as to McKenna's sanity.
The question was not whether he was actually insane, but
whether there was a reasonable doubt about it, which was con-
clusively established. The evidence was not hearsay, but a
fact, as notice, although given orally, is, notwithstanding, a
fact. If a grantor, in a chain of conveyances, regular upon
the record, should inform a proposed purchaser that a deed,
purporting to have come from him, was a forgery, and that he
would take the title at his peril, and should fortify his state-
ment by affidavits, it would be evidence of the same character
as that upon which the plaintiff acted.

On the trial the plaintiff offered in evidence a written agree-
ment between the defendant and the other heirs of her grantor,
made after the law day had passed, whereby she agreed to
unite with them in conveying the real estate embraced in the
deed to her, and to receive only one-fourth of the avails of
the sale. He also offered to prove that the attorneys for the
other heirs refrained from bringing an action to set aside the
deed to the defendant, for the reason that she voluntarily
entered into an agreement by which she was to accept the
share of the estate which would have been hers as heir at law
if she had never received the deed. · This evidence was

objected to by the defendant upon the ground that it was irrelevant and immaterial. The objection was sustained and the plaintiff excepted. This was error. The proof offered was both material and relevant. It would have tended to show that the defendant herself regarded the deed as invalid, and for that reason voluntarily surrendered three-fourths of the property which it purported to convey. This constituted a practical admission on her part that the title which she claimed to the property when the contract between the parties was made was not only unmarketable, but invalid. It was a circumstance which the plaintiff was entitled to prove, as tending to show that the title offered was at least doubtful, and not such as the plaintiff was required to accept.

The order appealed from should be affirmed and judgment absolute rendered against the defendant upon her stipulation, with costs in all courts.

O'BRIEN, J. (dissenting). I think the defendant's appeal from the judgment of the court below, reversing a judgment of the trial court in her favor, is well founded and should be sustained. This is an action by the plaintiff, the vendee of real property under an executory contract, to recover damages from the defendant, the vendor, for a breach of the contract on her part. The damage claimed is the sum of $500, being the amount paid down by the plaintiff upon the contract at the time of its execution, and the further sum of $166.60, being expenses incurred by him in examining the title, with interest on these sums from the 17th of March, 1892. The trial court, after a hearing, dismissed the complaint on the merits, but on appeal the judgment was reversed and a new trial granted.

It does not appear from the order that the reversal was upon the facts, and, therefore, we must assume that it was upon the law. This is a short decision under section 1022 of the Code, and in such cases the rule is well settled that all the facts necessary to support the judgment are deemed to be found, and all facts inconsistent with it, claimed by the

defeated party, are deemed to be negatived. (*Amherst College* v. *Ritch*, 151 N. Y. 282; *Marden* v. *Dorthy*, 160 N. Y. 46; *National Harrow Co.* v. *Bement*, 163 N. Y. 505.) In the absence of some valid exception, the only question that this court can review in such a case is, whether upon the facts found by the trial court the legal conclusion followed, and in this case the question is, whether upon the facts found the plaintiff's complaint should have been dismissed, as it was. (*Bomeisler* v. *Forster*, 154 N. Y. 229.) The principles governing actions of this character are well settled. The plaintiff in this case, who is the vendee under the contract, was bound to show that he had performed the contract on his part, tendered performance to the vendor on the law day and demanded performance on her part, or, failing so to do, he must show that such tender would have been useless or an idle ceremony on his part, for the reason that it was impossible for the defendant, the vendor, to perform on her part. (*Ziehen* v. *Smith*, 148 N. Y. 558; *Higgins* v. *Eagleton*, 155 id. 466; *Simis* v. *McElroy*, 160 id. 156.) The findings in this case were not set aside and they must control the decision in this court. There is no finding in the record that the plaintiff ever performed on his part or offered to perform or tendered performance; but since his complaint was dismissed, it must be assumed that all these facts were negatived or found against him. There is no finding that the defendant failed to perform or was unable to perform, but, on the contrary, since she succeeded at the trial, findings just the other way were made or must be assumed to have been made. That is, there is a finding in the record now before us that the defendant was at the law day ready and willing to perform the contract on her part. These findings of the trial court not having been set aside by the Appellate Division are still the only findings in the case, and, therefore, the plaintiff is without any finding whatever, either that he has performed himself or that the defendant, the vendor, failed to perform on her part or that she was unable to perform. The decision of the learned court below cannot, therefore, be sustained unless the record dis-

closes some error of law which would have justified a reversal, and to my mind it is impossible to state any such error. When the reversal of the Appellate Division is upon the law, as in this case, in order to sustain a reversal here, it must appear that some exception was taken on the trial raising a question of law, and that such question was erroneously decided. (*Schoonmaker* v. *Bonnie*, 119 N. Y. 566.) When the court disposes of the issues in a case by the short decision authorized by section 1022 of the Code, without stating separately the facts found and the conclusions of law as formerly, only one exception is provided for, and that is to the *decision* itself and not to the reasons or grounds of the decision. That exception enables the defeated party to review all questions of law and fact in the case, and if there was evidence to sustain any material fact necessary to the cause of action or defense of the party defeated, the court below may reverse the judgment upon the facts found, although there also may be evidence the other way in support of the findings of the successful party.

It is not claimed and it cannot be claimed that the finding in defendant's favor, to the effect that she was able and willing to perform, is without evidence to support it. Nor is it claimed that any improper evidence for the defendant was received at the trial. Hence, there is nothing left for this court to examine except the question whether any material finding of fact is without evidence to sustain it. (*National Harrow Co.* v. *Bement, supra.*) The learned counsel for the plaintiff does not claim that there is any such finding in the record, but he has argued the case precisely as if the reversal, which he seeks to sustain, was upon the facts. It appears, however, that the learned trial judge, after making his decision dismissing the complaint, stated the grounds or reasons for the decision. Among other things he stated that " there is no evidence before the court that Bernard McKenna was insane at the time he deeded this property to the defendant nor sufficient to create a reasonable doubt as to his sanity at this time." An exception was filed to this statement or remark and that is

the statement that is said to lack evidence to support it.    The
statement was that there *was no evidence* to show that defend-
ant's grantor was insane and not sufficient evidence to create
a reasonable doubt on that point.    This is simply a recital by
the trial judge of something that did not appear on the trial.
It is not a finding of fact or a finding of any kind.    It is
simply a reason for the decision or findings previously stated.
No such fact was in issue under the pleadings and no such
question was in controversy between the parties.    No such
fact, if fact it may be called, existed when the contract was
made, and it has nothing to do with the obligations of the
parties under the contract.    It is a mere statement of the
absence of certain evidence at the trial.    When it is called a
finding of fact or of law, it is only another way of saying that
there is no evidence in the record to show that there *was no*
*evidence* before the court that a certain person was insane.
That is that there was no evidence to prove a negative.    But
the learned trial judge found that the defendant's grantor was
not insane since he dismissed the complaint.    That is a finding
of a fundamental fact supported by evidence, and, it having
been so found, the statement that there was no evidence the
other way is wholly immaterial.    When a court finds facts
which control the case, it does not detract from these findings
to state that there was no evidence the other way; it rather
affirms the finding made and certainly cannot weaken it.    It
is enough that the evidence before the trial court justified the
finding which it made that the defendant's grantor was not
insane.    It must be remembered that the issue tendered by
the plaintiff in his complaint was that the defendant's grantor at
the time of the conveyance was a lunatic, and, hence, that the
conveyance was void and conferred no title upon the defendant.
The plaintiff was bound to prove that allegation.    It was not
enough to create a suspicion as to his soundness of mind.    We
have seen that the only exception provided for by the section of
the Code referred to is to the decision itself, and, therefore, the
plaintiff took nothing by the special exception to the state-
ment of the trial judge that there was no evidence in favor of

the contention to the contrary of the fact found, which was that the defendant's grantor was not insane. This assertion may be subjected to a very fair and certain test. Suppose that the court had made separate findings of all the facts with his general conclusion of law, as he might and as he was formerly obliged to, and after finding specifically that the defendant's grantor was not insane, as is now implied in his decision, and that finding was supported by evidence, as it is now in the decision, and he was requested by the plaintiff to find also that there was some evidence the other way, that is, in support of the contention that he was insane, and the court refused so to find, and there was an exception to such refusal, would that refusal to find as to evidentiary facts constitute grounds for reversal in this court? It certainly would not so long as the finding in favor of the defendant was supported by evidence (*Crim* v. *Starkweather*, 136 N. Y. 637); and it was always the law in this court that a judgment could not be reversed for a refusal by the trial court, at the request of the defeated party, to find even a material fact unless it was conclusively established (*Koehler* v. *Hughes*, 148 N. Y. 507), and now since the change in the Code that rule is held more strictly than ever. (*National Harrow Co.* v. *Bement, supra.*) No one claims that the fact in this case, if it be a fact, which was determined adversely to the plaintiff, was conclusively established. When the facts found are supported by evidence, as they are here, a finding that there was some or not any evidence the other way cannot possibly be material. This court cannot reverse a judgment or sustain a reversal below where the evidence was sufficient, for the sole reason that the trial court stated in his decision that there was no evidence to the contrary. That statement, whether right or wrong, was not a subject of exception any more than if it had been made by the court upon the trial or submission of the case. (*Rutherford* v. *Schattman*, 119 N. Y. 604.) The case is a very plain one in this respect, that it has not yet been found by any court that the plaintiff performed his contract or offered to perform. Nor that the

defendant committed any breach on her part or was for any reason unable to perform. How the plaintiff can recover in this situation, I am unable to perceive. The plaintiff's counsel has argued no exception taken at the trial, and the court has not been able to find any exception in the record, except that filed after the decision to a statement that there was no evidence of a certain fact claimed by the defeated party, and which seems to me is wholly insufficient as a basis for sustaining the reversal below.

But quite apart from this the statement of the trial judge, that there was no evidence that the defendant's grantor was insane, was entirely correct. There is not a shred of evidence in the case to show that he was insane, except the depositions contained in the lunacy proceedings taken in Ireland, where the defendant's grantor then lived, and when he was beyond the jurisdiction of the court, and which proceedings had been vacated by the order of the court. These depositions were hearsay and not admissible to prove the issue made by the complaint, and though they were admitted, the court had the right to hold in the end that they proved nothing. The plaintiff's counsel practically admits, as he must, that these written statements of persons in Ireland touching the mental condition of the party were not admissible to prove that the defendant was unable to convey good title at the law day. But he insists that the court having admitted them, though erroneously, was bound by them and could not say, as he did when deciding the case, that they had no probative force, and he cites a case to prove that proposition. (*Van Deusen* v. *Sweet*, 51 N. Y. 378.) But it will be seen, I think, upon reading the case, that it holds nothing of the kind. The proposition that a court, if it happens to receive hearsay evidence improperly and against the objection and exception of the party against whom it was offered, cannot disregard it when deciding the case, does not strike me as reasonable or sound. Testimony which has no probative force inherently is not changed in character by a ruling admitting it at the trial against the objection of the opposite party. It

is just as worthless after admission as it was before, and a judge who admitted it does not commit an error by stating in the decision that it proves nothing, and that was the effect of the statement made by the learned trial judge in this case as one of the reasons for his decision. When the plaintiff's counsel offered the statements of third parties to prove that the defendant's grantor was insane, and succeeded in putting them into the case against the objection of his opponent, he took the chances of a decision by the court that they proved nothing. The plaintiff cannot now complain because the court in deciding the case refused to give effect to incompetent testimony which had no tendency to prove any material fact. He had no right to rely upon testimony which he now admits and could have known at the trial to be inadmissible. The findings in this case, as above remarked certainly sustain the judgment, and there was no error of law committed at the trial which justified a reversal of the judgment. The difficulty in the case, so far as the plaintiff is concerned, is that whereas the court below evidently intended to reverse upon the facts, as it had the power to do, the order contains no statement to that effect. This is a mistake which parties frequently make, but it does not seem to me that the court should attempt to extricate them from the consequences, by holding that an exception to the statement of the trial judge in a short decision that there was no evidence of a certain fact, which he found the other way, is sufficient to sustain the reversal in this court.

The judgment should, therefore, be reversed and that of the Special Term affirmed, with costs.

PARKER, Ch. J., BARTLETT, HAIGHT, MARTIN and WERNER, JJ., concur with VANN, J., for affirmance; O'BRIEN, J., dissents.

Order affirmed, etc.