(89 Misc. Rep. 308.)

### LEINHARDT v. KALCHHEIM.

(Supreme Court, Appellate Term. November, 1902.)

1. VENDOR AND PURCHASER—MARKETABLE TITLE.

Adjoining landowners entered into a written agreement binding them and their heirs, which agreement provided that it should be construed as a covenant running with the land, limiting the depth to which foundations should be sunk on the dividing line, and also provided that, if one of the parties thereto should erect a building on a foundation any deeper than the foundation of the building of the other party, about to be erected, he should protect the wall of such other party. *Held*, that such agreement was such a cloud on the title of the person agreeing to protect the wall of the other that one purchasing from him under a contract providing for an unincumbered title would not be required to complete the purchase.

Appeal from city court of New York, general term.

Action by Sigmund Leinhardt against Dora Kalchheim. Judgment for plaintiff was affirmed by the general term, and defendant appeals. Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and BLANCHARD, JJ.

Jacob Levy, for appellant.

Jacob Rieger (Joseph Gans, of counsel), for respondent.

MacLEAN, J. In his action to recover down payment and expenses upon a contract for the purchase of real property of the defendant the plaintiff claimed the right to reject, as he did on the day fixed for the closing of title, the deed therefor tendered by the defendant, on the ground that the property was incumbered and burdened, and discovered so to be only by search. The burden was a

recorded agreement between one Hilkemeyer, of the first part, from and through whom is derived the title of the defendant, and one Stern-kopf, of the second part, which reads:

"Whereas, the foundations of the building of the party of the first part extends but nine feet in depth below the level of the curb, and, should the party of the second part build his said new building with foundations extending ten feet below the curb, it would be necessary to underpier the foundations of the said house and shore up the side walls of the building of the party of the first part, thereby causing considerable expense and inconvenience to the party of the first part; and whereas, in order to avoid said expense and inconvenience, the parties to these presents have agreed as hereinafter mentioned: Now, therefore, this agreement witnesseth: The party of the second part, in consideration of the sum of one hundred and fifty ($150) dollars, to him to be duly paid, hereby agrees that in erecting the proposed building on his said lot of land he will not build the foundations thereof any deeper below the level of the curb of the street than the depth of the foundations of the westerly wall of the building of the party of the first part. In consideration thereof the party of the first part agrees to pay said sum of one hundred and fifty ($150) dollars to the party of the second part, and he also agrees for himself, his heirs, executors, administrators, and assigns, to and with the said party of the second part, his heirs, executors, administrators, and assigns, that neither he, the said party of the first part, his heirs, executors, administrators, or assigns, will at any time hereafter, in case he or they should erect another building on the lot of the party of the first part in the place and stead of the present building now thereon, build a foundation of the said new building any deeper below the level of the curb of the street than the foundations of the building of the party of the second part about to be erected by him, but, in case he or they should build the foundations deeper than the foundations of the building of the party of the second part, he or they agree that they will properly underpin, shore up, and protect the wall of the building of the party of the second part at their own costs and expense. It is understood and agreed that this agreement shall bind the heirs, executors, and administrators of the respective parties, and shall at all times be construed as a covenant running with the land."

This was but a personal covenant, and one that did not run with the land, contends and contended the attorney for the defendant, and urges that a direction of a verdict in favor of the plaintiff, and all sustainment thereof by the court below, was error. As remarked in Mott v. Oppenheimer, 135 N. Y. 312, 319, 31 N. E. 1097, 1098, 17 L. R. A. 409:

"The question whether a contract having relation to lands is personal, or whether it constitutes a charge upon the lands, obviously must be determined by a consideration of the expressed intentions of the parties and of the existence of any interest in the land raised by force of its covenants."

This agreement, the parties have expressly declared, "shall at all times be construed as a covenant running with the land," therein and thereby evincing an intention to charge the land, notwithstanding failure to create such a covenant as they have determined in consequence of the absence of privity of estate. There was, however, the imposition of mutual restrictions upon the premises of each, and the purchase and sale of a right, "sometimes called an amenity," chargeable upon the premises of the contracting parties, without regard to privity of estate or community of interest. Trustees v. Lynch, 70 N. Y. 440, 26 Am. Rep. 615. Whether a covenant running with the land, or a right as above suggested, or a mere personal covenant, there is a question of law of sufficient import, even of doubt, as to

cast a shadow upon the title of the purchaser, if he be compelled to take and leave him in doubt and unrelieved, particularly in the absence of him in whom the outstanding right is vested (Brokaw v. Duffy, 165 N. Y. 391, 59 N. E. 196), and so the judgment of the court below may well stand.

Judgment and order of the general term of the city court affirmed, with costs. All concur.