MARY S. EIFFERT, Plaintiff, v. CHARLES G. HUMMEL, Defendant.

Supreme Court, Chemung County, June 3, 1931.

*Wilmot E. Knapp,* for the plaintiff.

*Danaher & O'Dea,* for the defendant.

SENN, Official Referee. On Saturday, September 11, 1926, between four and five o'clock in the afternoon, at the office of the defendant in the city of Elmira, the plaintiff entered into a written agreement with the defendant whereby she was to purchase of him the premises at No. 718 Columbia street, Elmira, N. Y., for the sum of $6,100. She paid $500 down at the time and was to settle for the balance on the delivery of the deed, viz., $3,500 cash and a mortgage of $2,100.

The contract provided that the owner was to " deliver a good warranty deed and abstract of title, showing property free and clear of all liens and encumbrances," but did not specify the time when the deed and abstract were to be delivered.

Plaintiff's version is that the contract was to be closed at the defendant's office in Elmira on the following Monday morning at ten o'clock. Defendant's version is that the papers were to be " got out " as soon as possible and that he told the plaintiff that he would have to send the deed to Florida to be signed by his sister, Mrs. Neville, and that he would notify the plaintiff when the deed was ready.

Soon after this the plaintiff refused to go on with the contract and demanded the return to her of the money she had paid. She claims that this was on account of having learned or been advised of a defect in defendant's title or, as she expressed it, that he did not " own it; " that she went to the defendant's office at the appointed time, but the office door was locked; that after that she called him on the telephone, telling him that on account of his lack of title she wanted her money back, but he told her she was dealing with Mr. Nelan, the real estate man who negotiated the sale, and that she knew what she was doing when she signed the contract; that she then took up the matter with Mr. Nelan with the same result.

Both Nelan and defendant testified that the plaintiff never mentioned the title to them as a reason for refusing to go on with the contract and that the only reason she ever gave was something about there not being a cupboard in the kitchen; that the first

either of them knew that there was any claim of a defect of title was when the action was commenced and the complaint served. In the following month the plaintiff purchased another house and lot in Elmira. It is suggested by the defendant that plaintiff's actual reason for not wanting the Hummel property was that she had found a bargain more to her liking and I am not certain but that this may be true. However, plaintiff had a right under her contract to expect and demand a good marketable title, free from actual and reasonably to be apprehended valid adverse claims.

It is, therefore, important to inquire whether on September 11, 1926, or within a reasonable time thereafter, it was possible for the defendant to tender or deliver to plaintiff a deed with such a title.

The facts as to defendant's title are as follows: On October 25, 1901, Gottlieb Hummel died, being then the owner of the premises in question. He left a last will and testament in which he devised this property to his wife, Catharine Hummel, " absolutely and as long as she remains my widow." The wife survived her husband, never remarried, never sold or conveyed the premises in question, and died intestate on April 7, 1919. She left Charles G. Hummel the defendant, Pauline Hummel, Wilhelmina H. Palmer and Catharine Neville, her children and only heirs at law. Pauline Hummel died intestate on March 9, 1924, leaving no husband or issue. Wilhelmina Palmer died on January 20, 1925, leaving no husband or issue, but having prior to her decease conveyed her interest in said real property to said Charles G. Hummel and Catharine Neville, who thus, subject to the qualifications hereinafter stated, became the owners in common of said premises.

At the time when the contract in question was executed, Gottlieb Hummel had been dead for nearly twenty-five years, but his will had not been probated and no proceeding for its probate had been instituted; no proceeding to administer the estate of Catharine Hummel, the widow, or of Pauline Hummel, the daughter, had been had or commenced and no administrator had been appointed, and the deed from Wilhelmina Palmer had not been recorded. In short, there was nothing of record to show that the defendant had any title whatever. About September 17, 1926, he and his wife acknowledged a deed conveying the contract premises to the plaintiff. It was then sent to Mrs. Neville in Florida who signed and acknowledged it on September 23, 1926. Defendant also, after the contract date, caused such proceedings to be taken that the will of Gottlieb Hummel was admitted to probate on November 23, 1926. Soon after its return from Florida the deed from Mrs. Neville and the defendant was tendered to the plaintiff with an

abstract of title carried to October 20, 1926. It showed the title of Gottlieb Hummel and the fact that his will, a copy of which was set forth, had been offered for probate and recited certain facts as to those who survived the testator and his widow. It was afterwards extended to show the probate of the Gottlieb Hummel will and the record of the deed from Mrs. Palmer on January 8, 1929.

Whether the time required for all those proceedings constituted an unreasonable delay may be a question. On September 11, 1926, the defendant had apparently done nothing to perfect or ascertain his title. After that he appears to have discovered something about the situation and to have taken steps to rectify it. If he encountered difficulties and delays, it was due to a large extent to his previous neglect.

The plaintiff is a woman of no more than ordinary education and must be entirely ignorant of those legal principles that enter into questions of title to real estate. It would be asking considerable of her to require her to wait and remain in doubt while the facts which the record failed to show were being supplied.

Now that the abstract exhibits all that can be shown, it seems to me that the defendant has never been in a position where he could convey the kind of title called for by the contract. The property is still subject to sale on the petition of creditors of any decedent through whose will or intestacy the title of the defendant is derived. The time to so petition is limited to eighteen months after the appointment of an executor or administrator (Surr. Ct. Act, §§ 232, 233) and as already stated, there are three estates involved in which no appointment has been made.

As to Gottlieb Hummel, it would probably be safe to assume that there are no valid claims against his estate. As to Catharine Hummel, in view of section 21 of the Civil Practice Act, her ordinary contract creditors, if any, had until October 7, 1926, to enforce their claims. If under seal or not due at her decease, they had still longer. Regarding the one-fourth interest of Pauline Hummel, on any possible interpretation of the statutes, it is still subject to be sold on the petition of any creditor.

It seem very clear to me that on the grounds stated the defendant has never been in a position to fulfill his contract.

There is plenty of authority to the effect that a promise to convey a good title is implied in an executory contract of sale (*Irving v. Campbell*, 121 N. Y. 353) and that the title need not in fact be bad to relieve a purchaser from his purchase, although it must, of course, either be defective in fact or so clouded by apparent defects that a prudent man would hesitate to take it. (*Greenblatt v. Hermann*, 144 N. Y. 13, 20.)

It is true that in the *Greenblatt* case the purchaser was compelled to take title. His refusal was based on the fact that the vendor got his title as purchaser in a proceeding to sell real property of a decedent for the payment of his debts and that it did not sufficiently appear in the petition that all of decedent's heirs had been named. It was held that in the absence of proof that there were other heirs, it would be presumed that all had been named. In that respect the case differed from the one at bar. The existence or non-existence of heirs was an ascertainable fact, but whether there were creditors of the deceased Hummels could not be found except by the prescribed statutory proceeding or by proof which the plaintiff herein could not reasonably be expected to supply.

" 'A purchaser should not be left, upon receiving a deed, to the uncertainty of a doubtful title or the hazard of a contest with other parties which may seriously affect the value of the property, if he desires to sell the same.' " (*Brokaw* v. *Duffy*, 165 N. Y. 391, 399, citing *Jordan* v. *Poillon*, 77 id. 518, 521.)

The abstract of title tendered by the defendant in this case did not show the property free and clear of all liens and incumbrances and the deed tendered was, therefore, not a good warranty deed.

Under the circumstances the plaintiff is entitled to recover of the defendant the sum of $500, the amount paid by her on the contract, with interest from the date when paid.

Submit findings accordingly.