Royal Baking Powder Company, Respondent, *v.* Raymond Hoagland et al., as Executors of Joseph C. Hoagland, Deceased, Appellants.

Contract — Construction of a Contract by Which Transferrer of Stock and Business of a Corporation Agreed to Assume and Pay Indebtedness Accruing Before a Certain Date.   The owner of the stock of a corporation agreed to transfer it to a new corporation to be organized to take over the stock of its predecessor and several other corporations engaged in the same business; in this agreement he stipulated that the old company should be free and discharged from all indebtedness matured and payable before a certain date, and that he would assume

any part of such indebtedness which for any reason it might not be prac-
ticable to discharge before that date; before that date the old company
had obtained a judgment in England against the infringer of a copyright,
from which judgment an appeal had been taken, and, pursuant to the
practice in England, the costs of the action were paid to the solicitors of
the old company, under an undertaking that they should be repaid to
the appellant if the judgment should be reversed; upon settlement with
the solicitors of the old company, the owner thereof applied such costs
upon their bill; some time after the transfer of the stock of the old com-
pany to the new company the judgment was reversed, and the new com-
pany, upon demand of the appellant, repaid the costs. *Held,* that the
owner of the stock of the old company, or his estate, was liable, under the
agreement, to the new company for the amount of the costs refunded by
it to the appellant.

*Royal Baking Powder Co.* v. *Hoagland,* 87 App. Div. 615, affirmed.

(Argued November 22, 1904; decided December 6, 1904.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the first judicial department, entered
November 5, 1903, affirming a judgment in favor of plain-
tiff entered upon the report of a referee.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*William N. Dykman* for appellants. Mr. Hoagland was
entitled to credit for the money in the solicitors' hands. The
referee erred in striking out this credit. (*Hood-Barrs* v.
*Heriot,* L. R. [1 Q. B.] 610.) The judgment appealed from
erroneously makes Mr. Hoagland's estate responsible for a
judgment after February first. There is absolutely no con-
nection between the sum paid by Wright, Crossley & Co. to
"old Royal's" solicitors in December, 1898, and the moneys
paid by its solicitors to Wright, Crossley & Co. after May 15,
1899, except identity of amount. (*Hood-Barrs* v. *Heriot,*
L. R. [1 Q. B.] 610.)

*Latham G. Reed* and *John M. Bowers* for respondent.
Mr. Hoagland should have paid the amount of Janson, Cobb,
Pearson & Co.'s bill; certainly he could not justly take the

credit of £1,428 7s. 3d., and throw off the charge of the same item.   Even if the necessity to hand back £1,428 to Wright, Crossley & Co., solicitors, arose after February 1, 1899, it was because of an obligation of restitution, both express and implied, incurred in December, 1898.  (*Haebler* v. *Myers*, 132 N. Y. 363; *Clark* v. *Pinney*, 6 Cow. 297; *U. S. Bank* v. *Bank of Washington*, 6 Pet. 18.)

O'BRIEN, J.   The plaintiff recovered a judgment upon a claim which it presented to the executors of Joseph C. Hoagland, deceased.   The claim was disputed by the executors and referred under the statute.   The referee reported in favor of the plaintiff, and his report was confirmed by the court, and subsequently, upon appeal, the judgment was unanimously affirmed.   Hence, so far as the facts are concerned, they must be deemed to be settled by that decision.

The questions of law involved in the case arise upon the construction of a written agreement made by the testator with the plaintiff, or at least for its benefit.   The legal effect of certain transactions in the rendering of accounts, which will be hereafter referred to, is also incidentally involved. The facts upon which the questions arise are undisputed, and the only question in controversy is with respect to the legal significance of these facts and how far, if at all, they tended to create a legal liability on the part of the deceased to the plaintiff.

The plaintiff corporation was created under the laws of New Jersey, and is the successor of another corporation of the same name, which was created and existed under the laws of New York.   In the month of February, 1899, a project was on foot for the incorporation of the plaintiff, in order to purchase and take over the stock of its predecessor and other corporations engaged in the same or kindred business.   This project was carried out and resulted in the incorporation of the plaintiff and the transfer to it of all the assets of the old corporation and the other corporations comprehended in the scheme. The deceased either owned or controlled all the stock of the

old Royal Baking Powder Co. and also the stock of another corporation known as the New York Tartar Co. He agreed to sell to plaintiff, the new company, all his stock in both of the other companies and this sale was made through a certain trust company and certain bankers in the city of New York who took over the securities under the agreement with the deceased for the purpose of transferring the same to the plaintiff. The two corporations of which the deceased was the owner of the whole capital stock were both going concerns and continued to transact business in the usual way down to the date of the transfer to the plaintiff, when they practically ceased to exist and became merged in the plaintiff. The agreement of the deceased whereby he transferred his stock contained certain stipulations which imposed upon him certain pecuniary obligations and the claim in question arises out of one of these stipulations. He agreed in substance that the said two corporations already referred to shall be freed and discharged of all indebtedness payable and matured before February 1st, 1899, and that he would assume and pay any part of such indebtedness which for any reason it may not be practicable to discharge before closing the transaction. All the operations of said two companies should, on and after February 1st, 1899, be for the account and benefit of the new company. There should be made and handed to the bankers certificates of the charges and liabilities which were to be discharged by the deceased as liabilities payable and matured before February 1st, 1899. . The stock of said two companies was to be taken by the purchasers as stock of going concerns subject to all unfulfilled contracts and all charges payable and maturing thereunder subsequent to January 1st, 1899, which unfulfilled contracts are such as contracts for purchase and sales of raw materials, engagements and obligations growing out of trade-mark litigations, general, usual and sundry contracts and engagements appertaining to the business carried on by said two companies.

The plaintiff's claim was that it was compelled to pay an obligation of the old Royal Baking Powder Co. which

was covered by this stipulation and which the deceased failed to pay. This claim or liability originated in certain litigations which the old company had in England and was for costs of a certain suit which amounted to 1,428 pounds, 7 shillings and three pence. This claim is the sole basis of the judgment in this case, and although the plaintiff claimed other items, yet none of them was allowed except the one here referred to.

It appears that among the trade-mark litigations in which the old company was involved at the date of the agreement was an action known as a libel suit brought by the old company in the High Court of Justice, Chancery Division, in England, against Wright, Crossley & Co. The action was tried before one of the justices of the court on July 2d, 1898, and decided in favor of the old company, which was the plaintiff in the action. But an appeal had been taken by the defendant therein from the judgment and was pending on February 1st, 1899. By the rules of practice then prevailing in the English courts, an appellant was required either to pay into court the costs taxed in the judgment appealed from, which would be repaid to him in case the judgment was reversed, or to pay said costs to the solicitors for the respondent, in which case said solicitors gave an undertaking to repay them in case the said judgment was reversed. The costs taxed in the libel suit against the defendants therein, who appealed, amounted to this sum of 1,428 pounds, 7 shillings, three pence, and on December 19, 1898, this sum was paid by the solicitors of the defendant in that suit to the solicitors of the Royal Baking Powder Co. pursuant to the rules and practice referred to and under the conditions already mentioned. It appears also that upon the hearing of the appeal the defendant in the action succeeded and the judgment recovered was reversed, and it was ordered that the plaintiff therein pay to the defendant the costs of the appeal and the costs of the action.

When the transfer of the stock of the old company was about to be made to the plaintiff, the old company requested from its solicitors in London a statement of disbursements

and charges from the time of the last settlement up to February 1st, 1899, and an account was rendered in which the charge for services amounted to 1,360 pounds, 12 shillings, 10 pence; the disbursements to 4,618 pounds, 17 shillings, and the credits to 2,704 pounds, 1 shilling, 4 pence, leaving due to the solicitors of the old company the sum of 3,275 pounds, 8 shillings, 6 pence.

It seems that in this statement, so rendered, the solicitors entered the taxed costs in the libel suit as a disbursement and likewise credited the same as a payment. Upon receipt of this statement Mr. Hoagland, the deceased, refused to allow the taxed costs as a disbursement, but accepted and took the benefit thereof as a credit upon the account, and thereupon paid to the solicitors substantially the balance due them as per said account rendered. After the reversal of the judgment and on or about May 10, 1899, the plaintiff, upon the demand of the solicitors in the libel suit appearing for the defendant, repaid to them the taxed costs of such suit amounting to the sum of 1,428 pounds, 7 shillings, 3 pence, the equivalent of which in American money was $6,996.10. This is the claim which the court has allowed against the deceased's estate. We think that the case was correctly decided. Notwithstanding the fact that the costs in the libel suit had been paid to the solicitors of the successful party, which was the old Baking Powder Co., yet this payment was subject to the subsequent reversal of the judgment, in which event the solicitors who had recovered the judgment were bound to refund the same to the solicitors who had succeeded upon the appeal. When the solicitors of the plaintiff in the libel suit received the costs from the defendant's solicitors, they received them not absolutely, but as a special fund subject to be restored or refunded upon the reversal of the judgment. Therefore this item was really a special fund in the hands of the plaintiff's solicitors which had nothing to do with their general account against their client until the payment was made absolute one way or the other by the decision of the appeal. It was not a proper item in their general account

against the plaintiff in the libel suit, but if it was it belonged on the debit as well as on the credit side of the account, and in refusing to treat these costs as a proper charge against the plaintiff and accepting the item as a credit the present controversy originates.

Although the judgment which awarded the costs to the plaintiff's solicitors was not reversed until after the 1st of February, 1899, yet the reversal in legal effect related back to the time when the judgment was recovered, or at least to the time when the costs were paid by the solicitors of the defendant in the libel suit. The effect of the reversal was to deprive the solicitors of the successful party at the trial of the benefit of the payment to them of the costs, since that payment was contingent only upon success in the appellate court, and inasmuch as the judgment was reversed and the solicitors thereby required to refund the costs that had been received, their client was not entitled to be credited with the item, and so the situation is precisely the same as if the account rendered had contained no reference to these costs. It follows, I think, that the report of the referee was correct, and that the judgment should be affirmed, with costs.

GRAY, BARTLETT, HAIGHT and VANN, JJ., concur; CULLEN, Ch. J., taking no part; WERNER, J., absent.

Judgment affirmed.