JEFFERSON COUNTY NATIONAL BANK, Appellant, v. ADELAIDE W. DEWEY, as Executrix of ADDICE E. DEWEY et al., Respondents, Impleaded with Others.

1. PROMISSORY NOTE — PAYMENT — ACCORD AND SATISFACTION — WHEN PART PAYMENT BY INDORSERS DOES NOT DISCHARGE THEIR LIABILITY. Where the indorsers of a promissory note, at the demand of the payee, pay, in two separate payments, the balance remaining due upon the note, after the payee had credited and indorsed thereon the amount recovered, under a judgment against the maker, in a creditor's action to set aside other judgments against the maker, and the payee delivered the note,

uncanceled and with the payments indorsed thereon, to the indorsers, such payments being made by the indorsers and the note being delivered to them, while an appeal was pending in the creditor's action, and thereafter and as the result of such appeal the payee was obliged to refund the amount received in the creditor's action, the payments by the indorsers, although made with the intent and purpose of discharging the debt, being made with full knowledge of all the facts by the indorsers, and there being no fraud or mistake, do not constitute a payment, or accord and satisfaction, of the note, and the payee can maintain an action against them for the amount remaining due thereon.

2. WHEN ACTION NOT BARRED BY STATUTE OF LIMITATIONS.   Where such payments, being merely partial payments in the ordinary sense and operating only to extinguish the note *pro tanto,* were made within six years after the note became due, and the action for the balance due on the note was commenced within six years after such payments, the action is not barred by the Statute of Limitations.

3. WHEN INDORSERS NOT DISCHARGED UNDER NEGOTIABLE INSTRUMENTS LAW (L. 1897, CH. 612).   The indorsers are not discharged from liability upon the note in question under the Negotiable Instruments Law (L. 1897, ch. 612), where the case is within none of the provisions thereof relating to the discharge of negotiable instruments, and even if it were, where the statute was not enacted until several years after the contract was made and the liability incurred.   .

4. EFFECT OF FINDING BY COURT.   Where it is found upon the trial of the action, brought against the indorsers for the amount remaining due upon the note in question, that there was no contract between the indorsers and the payee of the note indemnifying the latter against costs in the creditor's action, brought by the latter against the maker of the note and his judgment creditors, and there is no evidence sufficient to establish such a contract, the payee cannot recover the costs resulting from the reversal, on appeal, of the payee's judgment in the creditor's action.

5. WHAT CONSTITUTES SHORT DECISION UNDER THE CODE (CODE CIV. PRO. § 1022; L. 1894, CH. 688, § 3) AND DISTINGUISHES IT FROM LONG FORM OF DECISION.   Where a decision made by a trial court fails to comply with the requisites of the long form of decision prescribed by section 1022 of the Code of Civil Procedure (L. 1876, ch. 448, § 1022) in that it does not state separately the facts found and the conclusions of law, there being no facts separately stated, numbered and designated and no separation or numbering of facts or law, except as may be spelled out from distinct paragraphs of the decision and the only conclusion stated therein is involved in the direction for the dismissal of the complaint, such decision must be held to be in the short form permitted and introduced by the amendment to section 1022 enacted in 1894 (L. 1894, ch. 688, § 3).

*Jefferson County Nat. Bank* v. *Dewey,* 90 App. Div. 443, reversed.

(Argued February 1, 1905; decided March 7, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 5, 1904, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court at a Trial Term, a jury having been waived.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Lansing* for appellant.   The payment by the indorsers, Dewey, Nettleton and Phillips, of $811.46 on the note at different times did not pay the amount unpaid on this note. (*Grey* v. *Barton*, 55 N. Y. 68; *Ryan* v. *Ward*, 48 N. Y. 204; *Redfield* v. *H. P. Ins. Co.*, 56 N. Y. 354; *F. Ins. Assn.* v. *Wickham*, 141 U. S. 564; *Simons* v. *Supreme Council*, 82 App. Div. 617; *Shanley* v. *Koehler*, 80 App. Div. 566; *Jaffray* v. *Davis*, 124 N. Y. 164; *Bunge* v. *Koop*, 48 N. Y. 225; *Thomas* v. *Todd*, 6 Hill, 340; *Lightbody* v. *Ontario Bank*, 11 Wend. 9.)   The surrender of the note to Dewey at the time he made the last payment for himself and Nettleton was not a discharge of the indorsers, as the debt had not been paid in full. (*Burkhalter* v. *S. Nat. Bank*, 42 N. Y. 538; *Van Epps* v. *Dillaye*, 6 Barb. 244; *Pratt* v. *Foote*, 12 Barb. 209; *First Nat. Bank* v. *Morgan*, 6 Hun, 346; *Cole* v. *Sackett*, 1 Hill, 516; *Huys* v. *Stone*, 7 Hill, 128; *E. R. Bank* v. *Kennedy*, 9 Bosw. 543; *Johnson* v. *Bank of N. A.*, 5 Robt. 554; *Turner* v. *Bank of Fox Lake*, 4 Abb. Ct. App. Dec. 434; *Kelty* v. *S. Nat. Bank*, 52 Barb. 328.)   The amount of $2,576.41 received from the sheriff of Onondaga county and indorsed on the note March 21, 1895, was not a payment on the note, as the plaintiff was subsequently obliged to return the same to the sheriff, from whom it was received, and thus it was as if it had never been received. (*Habler* v. *Myers*, 132 N. Y. 363; *J. C. Nat. Bank* v. *Streeter*, 106 N. Y. 186; *Pritchard* v. *Hitchcock*, 6 M. & G. 151; *Close* v. *Stuart*, 4 Wend. 95.)

*John N. Carlisle* for Adelaide W. Dewey, as executrix, respondent.   The plaintiff, by surrendering the note to the

defendants Dewey and Nettleton upon their paying the balance claimed to be due thereon, discharged the said defendants from all further liability on said note, and cannot now maintain this action. (*Larkins* v. *Hardenbrook*, 90 N. Y. 333; *Simons* v. *American Legion of Honor*, 178 N. Y. 263; *Kent* v. *Reynolds*, 8 Hun, 559; *Jaffray* v. *Davis*, 124 N. Y. 170; *Schwartzman* v. *Post*, 94 App. Div. 475; *Beach* v. *Endress*, 51 Barb. 570.)   The claim in question is barred by the Statute of Limitations. (*Crow* v. *Gleason*, 141 N. Y. 489; *Adams* v. *Olin*, 140 N. Y. 150; *Pulver* v. *Esselstyn*, 22 Misc. Rep. 433; *Murdock* v. *Waterman*, 145 N. Y. 55.)

*George B. Warner* for Albert E. Nettleton, respondent. The note was voluntarily surrendered upon payment by defendants Dewey and Nettleton of the balance claimed due thereon, with full knowledge of all the facts, and, therefore, plaintiff cannot succeed in this action. (*Larkin* v. *Hardenbrook*, 90 N. Y. 333; *Kent* v. *Reynolds*, 8 Hun, 559; *Beach* v. *Endress*, 51 Barb. 570.)   In March, 1895, after the decision at Special Term in the judgment creditor's action, plaintiff received and indorsed on the note $2,574.   After an appeal had been taken from the decision plaintiff presented a statement and demanded as its due $739.40.   Acceptance of a check in payment thereof was an estoppel and an accord and satisfaction, release and discharge of defendants from liability. (*Reynolds* v. *E. L. Co.*, 85 Hun, 470; *Freiburg* v. *Moffett*, 91 Hun, 17; *Logan* v. *Davidson*, 18 App. Div. 353; *Lee* v. *Tinker*, 23 App. Div. 349.)   The Statute of Limitations is a bar to a recovery. (*Murdock* v. *Waterman*, 145 N. Y. 55; *Harper* v. *Farley*, 53 N. Y. 442; *Adams* v. *Olin*, 140 N. Y. 150; *Crow* v. *Gleason*, 141 N. Y. 489; *Burdick* v. *Hicks*, 29 App. Div. 205; *Blair* v. *Lynch*, 105 N. Y. 637; *Purdy* v. *Austin*, 3 Wend. 187; *Mills* v. *Davis*, 113 N. Y. 243.) The exceptions to the findings and decision of the court filed by appellant's counsel are too general to raise any question for review in this court. (*Wheeler* v. *Billings*, 38 N. Y. 263; *Ward* v. *Craig*, 87 N. Y. 550; *Thompson* v. *Hazard*,

120 N. Y. 634; *Drake v. New York Iron Mine*, 156 N. Y. 90.)

O'BRIEN, J. This was an action upon a promissory note against two of the indorsers. The note was made on the twenty-fifth day of December, 1891, by the Eureka Chemical Company, a corporation, for the sum of twenty-eight hundred dollars, payable four months after date to the order of the indorsers named therein. It is conceded that the liability of the indorsers was and is several, but only two of them were served in this action, who appeared and answered. On the trial by consent of counsel on both sides the jury was discharged and the case was submitted to the court, who subsequently filed a decision dismissing the complaint. That decision has been affirmed at the Appellate Division by a divided court and the plaintiff comes here. The note was dishonored and the liability of all the indorsers was fixed by a demand and notice of protest. This liability still exists unless one or more of the defenses interposed by the answer, and which will be referred to hereafter, have been made out.

The decision of the court below was not unanimous, as already stated, and, hence, the questions are open in this court whether the judgment ordered is supported by the findings, and as to how far the findings have the support of any evidence. It will not be necessary, however, in the view that we entertain of the case, to depart very far from the findings themselves. The defenses interposed by the two indorsers were, substantially, that the note in suit had been paid and discharged, and that it was barred by the Statute of Limitations. These several defenses rest upon a state of facts substantially admitted or without any serious conflict in the evidence. The defense of payment rests upon the claim that the note in question was paid by the maker, the corporation referred to, or at least that it had been collected by the plaintiff from the maker's property. Indeed, all the questions in the case may be grouped around this single proposition and may be said to flow from it as necessary legal deductions.

The note in question was discounted by the plaintiff, and, after it was dishonored, the plaintiff recovered a judgment against the maker on the second day of September, 1892, for $2,934.76. After the return of an execution unsatisfied upon this judgment the plaintiff brought an action, in the nature of a creditors' bill, against one Mrs. Townley and others, to set aside certain judgments which she had obtained and which had become a lien upon the property of the maker of the note. The plaintiff claimed that these judgments, which appeared to be prior liens, were fraudulent. In that action the plaintiff succeeded on the trial, and under a decree of the court, it appears that the property was sold and there was paid to the plaintiff on March 21st, 1895, the sum of $2,576.41, being the amount of the proceeds of the property of the maker which had been levied upon and sold by the sheriff, less the expenses of collection. The amount thus received was indorsed by the plaintiff on the note, but after the receipt of the money from the sheriff an appeal was taken by Mrs. Townley, in the judgment creditors' action brought by the plaintiff, and while that appeal was unsuccessful in the Supreme Court she succeeded in this court, where the judgment was reversed in June, 1899. (*Jefferson County National Bank* v. *Townley*, 159 N. Y. 490.) In August, 1899, the court made an order directing the plaintiff to make restitution of the money received from the sheriff, and the plaintiff complied with the order and returned the money that had been indorsed on the note.

In December, 1895, nearly four years before the reversal of the judgment referred to, the plaintiff demanded of the indorsers of the note payment of the balance due thereon; that is, the sum of seven hundred and sixty dollars. That was the amount due, providing the money received from the debtor's property can be treated as a payment. On December 18th, 1895, the defendant Dewey paid one hundred and twenty-six dollars and eighty-eight cents and the defendant Nettleton the same amount, and these payments were indorsed upon the note by the plaintiff. It appears that the

other indorsers on the note were irresponsible and failed to pay their *pro rata* share, and, therefore, on March 1st, 1896, the plaintiff demanded of the two defendants in this action the sum of four hundred and thirty dollars and seventy cents as the balance due on the note. On the 7th day of March, 1898, the two defendants in this action paid the balance due on the note of four hundred and thirty dollars and seventy cents, with the interest, and it is found that they made this payment with the intent and purpose of discharging the debt, and the plaintiff accepted the same and indorsed the same upon the note, and thereupon surrendered the note to Dewey, who continued in possession thereof from said date, and the note was produced uncanceled upon the trial of the action. It is also found that the plaintiff voluntarily surrendered the note with full knowledge of all the facts and without any fraud or mistake existing at that time. The defendant Dewey died on the 28th day of March, 1902, leaving a last will, and his wife, the defendant, was substituted as a party defendant in this action.

On this state of the facts, the question is whether the note in suit was paid by or collected from the maker. Certain payments were made on it by the two indorsers who were served in this action. It is not claimed that any other payments were made by any of the indorsers. Of course, if it can be said, as matter of law, that under these circumstances the plaintiff collected the note from the maker's property, that conclusion would inure to the benefit of the indorsers. The fact that it surrendered the note when all the parties supposed that the money received from the sheriff would be maintained as a payment is of very little significance. It is very obvious that the reversal of the judgment that the plaintiff recovered, in the creditors' suit has a most important bearing on this controversy. It was thereby adjudged that the money received by the sheriff and indorsed upon the note did not belong either to the plaintiff or to the maker of the note, but to Mrs. Townley; and so, although the plaintiff had gone through the form of indorsing the sum so received upon the

note, it was compelled by order of the court to restore the money to the party entitled to it by virtue of the prior judgment and levy upon the maker's property. The effect of this judgment of reversal was to undo all the things which had been done looking towards the collection of the note from the maker's property. It placed all of the parties in *statu quo*. It restored the legal relations of all the parties to the note in question to just what they were before the plaintiff's unsuccessful attempt to collect from the maker. As to all the parties to the note they were placed in the same position as if the payment of the money received from the sheriff had never been received or indorsed upon the note. So it cannot be asserted that the note in question was ever paid by the maker, or any part collected from its property. It seems to us that this conclusion not only rests safely upon reason and principles of natural justice, but that it has the sanction and support of a very recent decision in this court.

We have just held that where an attorney recovers a judgment for his client and which was paid by the unsuccessful party to the attorney pending an appeal, upon the reversal of the judgment the attorney's client, who had received the benefit of the payment by being credited upon a bill rendered to him by the attorney, was bound to restore or account for the money, and this although the client and the attorney had settled upon the basis that the attorney had received the amount of the judgment and credited it to his client in the bill rendered and upon which the settlement was made. (*Royal Baking Powder Co.* v. *Hoagland*, 180 N. Y. 35.) The money was received by the plaintiff from the sheriff with a litigation pending concerning the right of a third party, and so it was received and indorsed, subject, however, to the ultimate results of the litigation; and when the suit was decided in favor of the third party and the plaintiff was obliged to restore the money, the situation was in law just the same as if it had never been received or indorsed. So we think that the defense of payment was not in any legal sense established.

In regard to the defense of the Statute of Limitations, it is proper to observe that the question arising out of that defense does not seem to have been passed upon in the trial court by any direct finding of fact or of law. In the discussion of the case at the Appellate Division that defense was not referred to at all, but if the decision of the learned trial judge in this case is to be considered as what is known as a short form of decision, then it can be treated as covering all of the questions in the case that are within the scope of the pleadings and the evidence; but the short decision is absolutely essential to this defense, otherwise it cannot be said that it is presented here by any express finding or any exception. If the payments made by the defendants and indorsed upon the note are to be treated as partial payments in the ordinary sense, this action, having been commenced December 17th, 1899, was brought in time. The learned counsel for the defendants invokes the principle stated in *Crow* v. *Gleason* (141 N. Y. 489). It was said by Judge EARL in that case that "If there be a mere naked payment of money without anything to show on what account or for what reason the money was paid, the payment will be of no avail under the statute. The payment must be made under such circumstances as to show a recognition of a larger debt remaining unpaid." It will be noticed that the authorities cited by the learned counsel for the defendants on this question deal with cases where payments were evidenced by entries upon books kept by the parties, where a long account was involved and where the purpose of the payments was obscure or doubtful. We do not think that the principle stated has any application to the case at bar. The partial payments were made by the defendants upon the note in question; there was no dispute about the amount of it or about the payments made. It may be, and probably is, true that the defendants made the payments with the hope and expectation that they would not have to pay any more. It may also be true that the plaintiff's officers received these payments with the same hopes and expectations, but it turned out that they were all mistaken and that all their calculations had been upset by the success

of Mrs. Townley in securing a reversal of the judgment.
The first indorsement had been made upon the note of money,
the right to which was in dispute and subject to the result of
a pending litigation.   It was a conditional payment to the
knowledge of all the parties, and under these circumstances
it cannot be held that the partial payments made by the
defendants were not intended to be payments upon the note
in the same sense as if the attempt to collect from the maker
had never been made.   The defendants made the partial pay-
ments and the plaintiff indorsed them upon the note on the
basis only that the money received from the sheriff from the
proceeds of the sale of the maker's property would be retained
to apply upon the note by the favorable result of the litiga-
tion.   On this theory the indorsers paid and the plaintiff
received certain moneys which represented the balance of the
note.   But there was no agreement that the plaintiff should
take upon itself all the risks of the litigation, and there was
no accord and satisfaction.   The money paid by the indorsers
they were bound to pay in any event, and the only protection
that they had against further liability would be the successful
result of the pending suit, which was to determine whether
the large indorsement should inure to their benefit.   Hence,
the payments made by them operated only to extinguish the
note *pro tanto*, and so the action is not barred.

It has already been suggested that the Statute of Limita-
tions as applied to this case is a new question.   It was not
passed upon in the courts below.   The learned trial judge
made no finding of fact or of law that the action was barred
by the statute.   The question can be presented here only
upon the theory that the decision is a short one, and, hence,
the defendants are entitled to urge it under the doctrine
of this court that the dismissal of the complaint at the trial
covers every question in the case.   That is evidently the
theory upon which the question is now presented, since the
learned counsel for the defendants states upon his brief that
"The decision in this case is in the short form under sec-
tion 1022 of the Code, and was, therefore, in effect, a general

verdict, and on appeal it is to be presumed that all the facts warranted by the evidence necessary to the support of the judgment have been found." It is found that the note was surrendered with knowledge of all the facts, and that there was no fraud or mistake. All that is doubtless true, but the facts were just as well known to the defendants as to the plaintiff. All the parties knew when partial payments were made and the note handed to one of the indorsers uncanceled that these acts were conditional upon the successful result of the pending litigation. It is obvious that the plaintiff embarked in that litigation, not in its own interests, but for the purpose of saving the indorsers from loss, and that the defendants knew it is an inference from all the facts and the correspondence in the record so strong as to be almost irresistible. The indorsers knew or should have known that unless the plaintiff's claim to the fund received from the sheriff and indorsed on the note could be made good as the result of the pending suit their liability would continue until barred by the Statute of Limitations. Under these circumstances the payments made by the defendants must be deemed to have been made upon the note generally in the ordinary way.

The learned counsel for the defendants has called our attention to certain sections of the Negotiable Instruments Law under which he claims the defendants are discharged from liability. It is sufficient to observe with respect to that part of the argument that in our opinion this case does not fall within the terms of any of the sections to which he refers, and even if it did we do not see how the rights and obligations of the parties to the note in question can be affected by the provisions of a statute enacted several years after the contract was made. (Laws of 1897, chap. 612.) The plaintiff claims to recover $635.51, with interest from November 16th, 1899, the sum which on that date it was compelled to pay in order to discharge the judgment against it for costs in the creditors' suit. If this claim depended upon the fact that the defendants knew that the suit was prosecuted for the benefit of the indorsers it would be comparatively free from

difficulty, but the trial court found against the claim, and we think that the testimony was not sufficient to establish a contract of indemnity on the part of the defendants. It appears that the plaintiff's president, with whom the dealings and negotiations between the parties were had concerning the matters referred to, died before the trial and the plaintiff did not have the benefit of his testimony. So we think that upon the record now before us the plaintiff was not entitled to recover that part of the claim.

There is another question in the case that has originated among ourselves, and it relates to the jurisdiction of the court. The exception filed to the decision of the trial court is quite general. It was to the finding and decision of the court dismissing the complaint, and to the whole of said finding and decision, and, hence, it is said that no question of law is raised or presented by the appeal. It is admitted that this exception raises every question of law in the case provided the decision is in the new or short form introduced by the amendment to section 1022 of the Code. It seems very plain to me that it is. Since that amendment much has been said and written in this court concerning long decisions and short decisions, so called, for want of a better expression. But this court has never, that I am aware of, given to the profession any definition or laid down any landmarks by which the one can be distinguished from the other, and, hence, the bar must be somewhat in the dark on that subject, or dependent on the views that this court may entertain in each particular case, and these views can never be known since in such cases where the appeal is dismissed it is generally, if not always, without an opinion.

But it is not very difficult to point out the distinguishing marks of the two forms of decision prescribed by the Code: Prior to the amendment introducing the new or short form of decision, the report of a referee or the decision of the court upon the issues in an action was in a form that had been in use for nearly half a century, and was familiar to the bench and the bar. It consisted of a separate written statement of

the facts designated as facts and plainly numbered, and a separate statement of the conclusions of law designated as such and numbered. The purpose of requiring the facts and conclusions of law to be so stated and designated was to enable the defeated party to take proper exceptions, and for the convenience of reference upon appeal or otherwise. The duty was imposed upon the judge or referee to state and classify facts and law, to the end that the court upon appeal or the defeated party would not be obliged to select and pick out both from the confused mass. The parties and the court were entitled to know from the result of the trial what the judge or referee held to be facts and what he held to be law.

The decision in this case does not comply with scarcely a single one of these requisites, and, hence, it must be a short decision, since a long decision is now just what it was before the amendment. It commences with the words, " It is hereby decided as follows," and it ends with the dismissal of the complaint. The judge does not state in any part of the decision that he has found any facts as such or any conclusions of law as such. There are no facts separately stated, numbered and designated as the findings of fact in the case, nor are there any conclusions of law separately stated, numbered and designated as such. There is no separation or numbering of facts or law, except such as may be spelled out from distinct paragraphs of the decision. Now, nearly every short decision is divided into paragraphs, and that is the only way the decision in this case is divided, and except for the unnumbered and undesignated paragraphs the facts and law would be blended together. Paragraphs are frequently the work of the printer or proofreader, and it has been held that no form of punctuation can control judicial interpretation. (*People ex rel. Krulish* v. *Fornes*, 175 N. Y. 114; *Marshall* v. *Com. Travelers' M. Acc. Assn.*, 170 N. Y. 434, 438.) It is safe to assert that a decision in the form of the one in this case was unknown to the bench or bar prior to the amendment of the Code, and, hence, it must be the new or short decision. It is, of course, impossible for court or counsel to refer to any

finding, whether of fact or of law, by number, but in order to make the reference intelligible the passage or paragraph must be quoted in full.

There is really but one conclusion stated in the decision, and that is involved in the direction for a dismissal of the complaint. The two paragraphs that precede this direction are not conclusions of law in the proper sense. Each of these paragraphs commences with a statement that there is no proof in the case on certain specified questions, and then follows the conclusion that the defendants are not liable. So that at best they can be treated only as conclusions of law mingled with other matter. A statement in a decision that there is no evidence on certain questions is neither a finding of fact nor of law. How such statements are to be classified was left undecided in *Brokaw* v. *Duffy* (165 N. Y. 391, 402), but in my opinion it is not a finding at all in any legal sense, but a reason for some conclusion. Findings in a legal sense must be based upon the issues in the case. A statement that there is no evidence on a certain question may be a good reason for a conclusion, but I am unable to perceive how it can be a finding of law or of fact in any legal sense.

The decision in this case was treated as a short one in the court below, and in this court counsel upon both sides have treated it as such. I have already quoted the language of the defendants' counsel on that point as found in his brief, and certainly the plaintiff's counsel treated it as a short decision since he filed an exception applicable only to that form. Consent cannot confer jurisdiction upon this court, but where the question of jurisdiction depends upon the form of a decision, it ought to be made very clear in order to warrant the court in declining to decide the case. When the decision in this case is examined from beginning to end it will be found to have all the characteristics of that form of decision introduced by the amendment to the Code, and none of the qualities of the decision in use before that amendment.

It follows that the judgment should be reversed and a new trial granted, costs to abide the event.

VANN, J. (dissenting). A judicial decision made without jurisdiction is a usurpation of power. In order to properly decide this appeal we must have jurisdiction to hear it. Our jurisdiction depends upon the nature of the decision filed by the trial court, construed according to the statute in force when it was made. Prior to 1894 it was provided that "the decision of the court * * * upon the trial of the whole issue of fact, must separately state the facts found and the conclusions of law and it must direct the judgment to be entered thereon." (L. 1876, ch. 448, § 1022; Code Civ. Pro. § 1022.) By an act which took effect on the first of June, 1894, section 1022 was so amended as to add to the words above quoted the following: "or the court * * * in deciding the issues may file a decision stating concisely the grounds upon which such issues have been decided, and direct the judgment to be entered thereon." (L. 1894, ch. 688, § 3.) The next year the section was further amended by striking therefrom the words "in deciding the issues" and it stood thus until the first of September, 1903, when an act went into effect by which the changes made in 1894 and 1895 were wholly omitted and the statute of 1876 restored, so far as the nature and form of a decision by the court or a referee is concerned. (L. 1895, ch. 946, § 1; L. 1903, ch. 85, § 2.)

When the facts found and the conclusions of law are separately stated, the decision, being long in form, has commonly been called "the long form," but when simply the grounds are given without stating the facts found or the conclusions of law, it is usually called "the short form." The latter requires only a general exception to authorize a review of the decision (*Otten* v. *Manhattan Ry. Co.*, 150 N. Y. 395, 399; *Petrie* v. *Trustees of Hamilton College*, 158 N. Y. 458, 463), while the former requires a specific exception to each ruling. (*Drake* v. *N. Y. Iron Mine*, 156 N. Y. 90, 92; *Daniels* v. *Smith*, 130 N. Y. 696; *Thompson* v. *Hazard*, 120 N. Y. 634; *Ward* v. *Craig*, 87 N. Y. 550, 557.)

The action now before us was tried on the 6th of October, 1902, and decided on the 5th of April, 1903, while the act of

1894 was still in force.   The only exception filed was " to the findings and decision of this court in said action   *   *   * and to the whole of said findings and decisions."

The decision of the trial judge, twenty-four folios in length, after reciting when and before whom the action was tried, states that "it is decided as follows."   Nine paragraphs follow, separately stated, but not numbered, six in the form of findings of fact and three in the form of conclusions of law, although not named as such.   Each begins with an independent sentence and is separated from the next by a blank space. To show their nature I will quote the first paragraph in full, as it fairly illustrates that part of the decision which impresses me as containing only "the facts found," separately stated from the conclusions of law.   It is as follows: "That the plaintiff is a banking corporation, duly incorporated under the laws of the State of New York, doing business at Watertown, Jefferson County, New York; that on or about the 25th day of December, 1891, the Eureka Chemical Company, a duly incorporated company, doing business at the city of Syracuse, New York, by its officers and agents executed and delivered its note conditioned for the payment of $2,800 in three months after date at the banking office of the plaintiff, which note was payable to the order of G. S. Farmer, Dewitt H. Copley, A. E. Dewey, Hiram Copley, A. E. Nettleton and L. F. Phillips; that all of said persons endorsed said note, and the same was thereupon for value transferred to and discounted by the plaintiff at its date; that when said note became due the same was duly protested for non-payment, of which the endorsers had due notice."   This is a complete paragraph standing by itself the same as each of the others, and is a finding of fact in relation to the giving, discounting and protesting of the note in question.   It shows that the plaintiff once had a cause of action against the defendants.

The second paragraph states facts relating to a different subject, namely, the recovery of judgment on said note by the plaintiff against the maker, the filing of a creditor's bill against third persons to set aside judgments which were a lien

8

on the property of. the maker, the termination of that action in favor of the plaintiff, the collection pursuant to the decree of the sum of $2,576.41, the indorsement thereof upon said note, the demand by the plaintiff of payment of the balance due thereon, the payment of a part thereof, and the demand of the remainder of Nettleton and Dewey "as a balance due upon said note."

The third paragraph relates to the payment by Nettleton and Dewey of "the balance due on said note of $430.70 with the intent and purpose of discharging the debt and" states that "the plaintiff accepted said sum and endorsed the same upon said note and thereupon surrendered said note" to one of the persons so paying.

The fourth paragraph states that the note was voluntarily surrendered by the plaintiff "with full knowledge of all the facts and without any fraud or mistake existing at that time."

The fifth paragraph relates to an appeal in the judgment creditor's action, the reversal of the judgment therein, the restitution made pursuant to order, the demand by the plaintiff of the note and of payment of the balance thereon with the costs of the suit in the creditor's action, etc. Thus paragraphs two to five inclusive relate to a defense to the cause of action set forth in the first.

The sixth paragraph states, as the reason why Nettleton and Dewey were the only parties served with process, that the other indorsers were insolvent. It also states that Mr. Dewey had died during the pendency of the action, and that his legal representative had been duly substituted.

These are the findings of fact, standing by themselves, full and complete and designed to sustain the conclusions of law, which follow in the next three paragraphs, separated from the other findings by a convenient interval. The first is that owing to the absence of evidence to show that Dewey or Nettleton requested the plaintiff to commence the creditor's action, "there is no liability on the part of the defendants Nettleton and Dewey to pay the costs incurred by the plaintiff upon the trial of the said action." That conclusion of law disposed of

the question relating to the costs in the action against third parties, leaving the question in relation to liability on the note undisposed of.   The next paragraph states that as the note was paid after maturity and voluntarily surrendered by the plaintiff to Nettleton and Dewey under the circumstances previously found, "such voluntary surrender operated as a release and discharge from any liability against said defendants, Albert E. Nettleton and Addice E. Dewey."   That decided the remaining question of law by stating the appropriate conclusion.   The last paragraph is simply the direction for judgment dismissing the complaint upon the merits as to the defendants Nettleton and Dewey, with costs.   There must be a direction for judgment in both forms of decision, but that is the only feature common to both.

This decision, as I read it, does not state "concisely the grounds" upon which it was made, as distinguished from a statement of "the facts found and the conclusions of law." It is not a direction for judgment with an argument to justify it.   The "grounds" of a decision in a short form are like a brief argument of counsel in favor of his theory of the case, in which law and fact are not separated but commingled.   A separate statement of the facts in the long form of decision is like the allegations of fact in a well-drawn pleading, while the conclusions of law are the announcement of the legal rules applicable to those facts.   It is unnecessary to label either the facts or the law, because they classify themselves according to their nature and cannot be changed if classified wrongly, by court or counsel.   If a fact is characterized as a conclusion of law, that does not make it one, for it is a fact still, regardless of the name given to it.   The real nature of this decision would not have been changed if the trial court had said "I find as facts" at the head of the first six paragraphs, or "I find as conclusions of law" at the head of the last three.   The six paragraphs contain nothing but facts and the three nothing but conclusions of law.   They are separately stated, in the usual form and the usual order, the facts first and the law last.   They are exhaustively stated,

so as to embrace all the material facts with all the conclusions of law governing the rights of the parties according to those facts. They follow the ancient form, adopted by courts and referees long before the unfortunate innovation was made in 1894. Nothing is wanting except the name, which the law does not require. The statute does not provide that the facts shall be named or characterized as facts, or the conclusions of law as such, but simply that the court "must separately state the facts found and the conclusions of law." The nature of a finding shows whether it is a fact or a conclusion of law, or whether it is an argument giving the "grounds" or reasons for a decision in the short form, which usually begins with the direction for judgment and ends with a concise argument to show why such direction was made.

The understanding of the trial judge as to the nature of his decision may be gathered from the closing sentences of his opinion, where he says: "Proper findings may be prepared. If not agreed upon they will be settled upon notice." Having made his argument and stated his "grounds" in an opinion, all that was needed was a statement of the facts found and the conclusions of law, which was prepared accordingly. A settlement on notice of a decision in the short form is unknown, for no judge would ask counsel to prepare an argument for him, but is common where the decision is in the long form. The same is true of a finding that representatives of a deceased party have been substituted during the pendency of the action. I find all the essential characteristics of the one form present and of the other absent.

I think the decision in question is in the long form, because it separately states the facts found and the conclusions of law and does not merely state the grounds or reasons for directing judgment. We should not attempt to review the decision, because the exceptions thereto are insufficient to authorize it, as appears from the authorities already cited. As the three exceptions taken by the plaintiff to rulings relating to evidence are manifestly frivolous, we are without jurisdiction to decide the questions discussed in the prevailing opin-

ion.   Without expressing my views upon the merits, which are not before us if I read the decision correctly, I vote to dismiss the appeal. ·

CULLEN, Ch. J., GRAY, BARTLETT and HAIGHT, JJ., concur with O'BRIEN, J.; WERNER, J., concurs with VANN, J.

Judgment reversed, etc.