THE JEFFERSON COUNTY NATIONAL BANK, Respondent, *v.* ADELAIDE W. DEWEY, as Executrix of ADDICE E. DEWEY, Deceased, et al., Appellants, Impleaded with Others.

Bills, notes and checks — liability of indorsers — effect of conditional payment of note.

Indorsers upon a promissory note paid the balance remaining due after the payee had credited and indorsed thereon the amount which it had recovered upon a judgment against the maker, in a creditor's action to set aside other judgments against such maker, whereupon the payee delivered the note to the indorsers. This transaction was had while an appeal was pending in the creditor's action which resulted in a reversal of the judgment therein. As the result of the reversal the payee was obliged to refund the amount received upon the note in the creditor's action. *Held,* following the decision on the former appeal in this action (181 N. Y. 98), that the payment by the indorsers was a conditional payment to the knowledge of all the parties, and further that the additional evidence given on the trial now under review, as to the extent of knowledge of one of the indorsers relative to existing conditions at the time he made the payment, is not sufficient to change the rights of the parties, and that in making a partial payment under the circumstances, the indorsers recognized their liability; hence the payments made by them operated only to extinguish the note *pro tanto* and the action is not barred.

*Jefferson Co. Nat. Bank* v. *Dewey,* 121 App. Div. 894, affirmed.

(Argued October 13, 1909; decided December 7, 1909.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 27, 1907, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*J. N. Carlisle* for Adelaide W. Dewey, as executrix, appellant. The trial court erred in refusing to submit to the jury the question as to whether or not the payments made by the defendants Nettleton and Dewey were made in payment and discharge of the note in suit and not in recognition of or conceding any further liability. (*Crow* v. *Gleason*, 141 N. Y. 489; *Adams* v. *Olin*, 140 N. Y. 150; *Pulver* v. *Esselstyn*, 22 Misc. Rep. 433.)

*Theodore E. Hancock* for Albert E. Nettleton, appellant. The trial court committed error in directing a verdict for the plaintiff. (*McDonald* v. *M. R. R. Co.*, 167 N. Y. 66; *Strickland* v. *Henry*, 175 N. Y. 372; *Shortsleeve* v. *Stebbins*, 77 App. Div. 588; *Powell* v. *Powell*, 71 N. Y. 71; *Chisholm* v. *State*, 141 N. Y. 246; *Snowden* v. *Town of Somerset*, 171 N. Y. 99.) By directing a verdict for the plaintiff the trial court erroneously decided that the defendant Nettleton did not make his final payment of $215.35 with the intent and purpose of discharging his final liability on the note. (*Schwartzman* v. *Post*, 94 App. Div. 475; *Larkins* v. *Hardenbrook*, 90 N. Y. 333; *Jaffray* v. *Davis*, 124 N. Y. 170.) In directing a verdict for the plaintiff the trial court erroneously held as a matter of law that the plaintiff's claim was not barred by the Statute of Limitations. (Abb. Tr. Ev. 824; *Adams* v. *Olin*, 140 N. Y. 150; *Crow* v. *Gleason*, 141 N. Y. 489.) By accepting the check of Nettleton, with the condition of an absolute release thereon, the plaintiff discharged Nettleton from further liability thereon. (*Wisner* v. *Schopp*, 34 App. Div. 199; *Fuller* v. *Kemp*, 138 N. Y. 231; *Freiberg* v. *Moffet*, 91 Hun, 17; *Van Bokkelen* v. *Taylor*, 62 N. Y.

105; *Hills* v. *Somner,* 53 Hun, 392; *Reynolds* v. *Empire Co.,* 85 Hun, 470; *Looby* v. *Village of West Troy,* 24 Hun, 78; *Logan* v. *Davidson,* 18 App. Div. 353.)

*Frederick W. Boyer* for respondent. The note was not paid; the Statute of Limitations did not apply; the claim that the defendants were discharged from liability under sections 200 and 203 of the Negotiable Instruments Law was not tenable and there was no accord and satisfaction. (*J. C. Nat. Bank* v. *Dewey,* 181 N. Y. 98.)

HAIGHT, J. This action was brought upon a promissory note, made by the Eureka Chemical Company, for the sum of twenty-eight hundred dollars, payable four months after date to the order of the indorsers named therein, which note had been indorsed by the defendants and four other persons and transferred to the plaintiff. At the maturity of the note the same was duly protested and the indorsers were charged by giving them notice.

The facts are without substantial dispute, and are, in substance, as follows: At the time of the maturity of the note the maker, the Eureka Chemical Company, had become financially embarrassed, and a foreclosure of a mortgage upon its property was pending which finally resulted in a decree and a sale of the premises, upon which there was a surplus nearly sufficient to discharge the note in question. But in the meantime one, Mrs. Townley, had recovered a judgment against the company which became a first lien upon the surplus, and inasmuch as the judgment was greater than the amount of the surplus, it left nothing to apply upon the note. Under these circumstances Mr. Dewey, who was the president of the company and who, since the first trial of this action, has died, and is now represented by the defendant, his executrix, retained an attorney and instituted proceedings to have the Townley judgment vacated. Upon the hearing this relief was denied, the court suggesting that if the creditors of the corporation were entitled to the relief asked for, it should be through

an action in the nature of a creditors' bill. Thereupon Mr. Dewey consulted Mr. Sawyer, of Watertown, an attorney at law, and was advised by him to see Mr. Camp, the president of the bank, and explain the matter to him and see if he could obtain his consent to bring such an action. Thereupon Dewey left, as Mr. Sawyer testifies, and two or three days thereafter the president of the bank handed him the note in question, upon which he brought an action against the company serving the summons upon Dewey, as president, but did not make the indorsers parties to the action. Upon this action judgment was entered against the company by default, and execution was issued thereon. Thereupon the creditors' action was brought to set aside the Townley judgment which resulted in favor of the plaintiff, and then the sheriff, who had levied upon the surplus, paid over the sum of $2,574.00 to the bank, which received and indorsed the same upon the note in question. Subsequently, the bank notified the indorsers of the amount of the balance that remained due and unpaid upon the note, and the defendants Dewey and Nettleton each paid their respective shares; but the other four indorsers, having in the meantime become irresponsible, did not pay, and subsequently, upon the suggestion of the defendant Nettleton, he and Dewey made another payment upon the note of the balance that then remained due and unpaid, and upon receiving such amount the bank handed the note over to Dewey. Subsequent to the payment of the money by the sheriff to the bank, Mrs. Townley took an appeal from the judgment rendered against her to the Appellate Division, which affirmed the judgment. A further appeal was then taken by her to the Court of Appeals, which resulted in a reversal of the judgment. (*Jefferson County National Bank* v. *Townley*, 159 N. Y. 490.) An order was then obtained requiring the bank to make restitution of the money received from the sheriff. The bank, after complying with that order, again called upon the indorsers to make good the amount and also the costs which

it had been compelled to pay upon the reversal of the judgment by the Court of Appeals. The indorsers having neglected to pay the same, this action was brought.

Upon the first trial judgment was awarded to the defendants. It was affirmed in the Appellate Division by a divided court, but in the Court of Appeals it was reversed and a new trial ordered. (*Jefferson County National Bank* v. *Dewey*, 181 N. Y. 98.) The opinion in that case was written by Judge O'BRIEN, and he disposed of all the questions then involved. Upon the new trial, by stipulation of the parties, the evidence was read from the record of the former trial, and the only additional evidence given was that of the defendant Nettleton. Upon his direct testimony he testifies that he knew nothing about the suit by the bank against the Eureka Chemical Company, and nothing with reference to. the suit brought against Mrs. Townley. He, however, admits that he was a director of the company; was an indorser upon this note; that he knew of the amount thereof and that it had not been paid by him; that he often consulted with Dewey with reference to it, and that Dewey told him, after the Eureka Chemical Company was in trouble, that it had assets sufficient to take care of their liability upon the note; that he did not go into detail. He also conceded that he knew of the sale of the property of the chemical company under the foreclosure; that he knew that the real estate was sold, but did not know that all of the personal property was sold, and that he also had heard that the sum of $2,574.00 had been paid upon the note, but that he did not know that it came through the hands of the sheriff. He then concludes his testimony by stating, "Mr. Dewey was managing this matter for me and the other indorsers, and I trusted him." It appears to me that this statement can be given but one meaning, and that is that Dewey, the president of the company and one of the indorsers upon the note, was authorized by this defendant to manage the matter for him and the other indorsers. In other words, he was his agent, and whatever Dewey knew with reference to the Townley judgment and his proceedings with reference

thereto, was imputable to the defendant Nettleton. As to Dewey, it is evident that he knew of all of the circumstances from the beginning to the end. He instituted the proceedings; he himself so testified. He was a witness upon the trial of the creditors' action against Townley, and advised with the lawyers conducting the case. .

At the conclusion of the evidence the court, following the decision of this court, directed a verdict in favor of the plaintiff for the balance due upon the note, but refused to include the costs which the bank had been compelled to pay upon the reversal of the Townley judgment in this court. It may be that the admissions of Dewey with reference to the instituting of the proceedings to set aside the Townley judgment, his interviews with Sawyer and the part that he took in the trial of the case, with the inferences to be drawn therefrom, were sufficient to make the question of costs one for the jury. But the bank has not appealed, and consequently that question is not now before us for review.

It is now contended that the evidence of Nettleton changes the rights of the parties from what they were when the case was under review in this court on the former appeal; that Nettleton made his payments upon the note with the understanding that it was a final payment discharging in full his obligation thereon, and that, therefore, the payment so made did not prevent the running of the Statute of Limitations. But, as we have seen, he or his agent Dewey understood all of the facts. They knew that they were severally liable upon the note as indorsers. They knew that it was a liquidated claim and could be discharged only by payment; that a payment of a less sum than the principal would, in law, be deemed a payment upon account. They knew that the $2,574.00 indorsed upon the note was made out of the assets of the company through some legal proceedings. In making a partial payment they recognized their liability as indorsers. As is stated by Judge O'BRIEN, " It may be, and probably is, true that the defendants made the payments with the hope and expectation that they would not have to pay any more. It may also

be true that the plaintiff's officers received these payments with the same hopes and expectations, but it turned out that they were all mistaken and that all their calculations had been upset by the success of Mrs. Townley in securing a reversal of the judgment. The first indorsement had been made upon the note of money, the right to which was in dispute and subject to the result of a pending litigation. It was a conditional payment to the knowledge of all the parties, and under these circumstances it cannot be held that the partial payments made by the defendants were not intended to be payments upon the note in the same sense as if the attempt to collect from the maker had never been made. * * * The money paid by the indorsers they were bound to pay in any event, and the only protection that they had against further liability would be the successful result of the pending suit, which was to determine whether the large indorsement should inure to their benefit. Hence, the payments made by them operated only to extinguish the note *pro tanto*, and so the action is not barred."

The judgment should be affirmed, with costs.

HISCOCK, J. (dissenting). I dissent from the opinion which is to prevail in this case.

This action is brought to recover the balance unpaid on a certain note made by the Eureka Chemical Company and held by the respondent, and for which balance it is claimed that the appellant Nettleton and the appellant Dewey's testator, one Addice E. Dewey, became liable as two amongst several indorsers, and judgment has been rendered against them.

Various reasons are urged why the judgment should be reversed, but in my opinion none of these permit discussion in view of the decision of this court on a former appeal (*Jefferson Co. Nat. Bank* v. *Dewey*, 181 N. Y. 98), except the one that this action was barred by the Statute of Limitations. I disagree with the disposition made of this defense as to the appellant Nettleton, and whereby it was held as a matter of law that the same was not established, and the discus-

sion of the question thus arising will involve a statement somewhat at length of the facts presented on this appeal.

After the respondent had discounted the note above mentioned the maker thereof, the Chemical Company, became embarrassed financially, and a judgment was recovered against it by a Mrs. Townley on a claim assigned to her by her husband, who was secretary of the company, and under the execution issued on this judgment a levy was made on the company's property. Subsequently the plaintiff recovered judgment on its note against the company and on said judgment brought a creditor's action to set aside the Townley judgment and all proceedings thereunder. It was successful in this suit in the beginning, and with the result that upwards of $2,000, proceeds of the sale of the debtor's property, was taken away from Mrs. Townley and paid to the respondent to apply on its note. Thereafter the balance remaining unpaid on the note was apportioned amongst the six indorsers and Messrs Dewey and Nettleton each paid as his respective share of the entire balance claimed to be unpaid on December 18, 1895, the sum of $126.88. It transpired, however, that some of the indorsers were not responsible and did not pay their respective shares of this balance, and on account of these defaults there still remained unpaid on March 7, 1898, a balance of $430.70, and on said date Messrs. Dewey and Nettleton paid this balance, share and share alike. The first payments were made in accordance with a statement furnished by the bank which showed explicitly that the balance remaining unpaid on the note would be satisfied in full by the proposed payment by Dewey and Nettleton, subject, possibly, to a default by other indorsers in payment of their shares. At the time the last payments were made the respondent indorsed on the note " Received of A. E. Dewey and A. E. Nettleton $430.70, the balance due on within note," and the note was delivered up to Mr. Dewey. In addition the appellant Nettleton, when making his first payment, wrote a letter inclosing the check to the respondent's cashier and which in part read as follows: " Enclosed please find check for

$126.88, my proportion of the note of December 25, 1891, which kindly send me a receipt for and advise me when the note is due just what amount has been paid on the same." To this letter he received an answer written by the respondent's president stating, "Yours of the 16th is at hand enclosing check. * * * My impression is that some of the indorsers cannot respond, and you may be assessed for an additional sum."

Mr. Nettleton made his second payment above mentioned by a check which read as follows:

"SYRACUSE, N. Y., *March* 1, 1898.

"The Bank of Syracuse pay to Smith Woolworth, cashier, or order, two hundred and fifteen and thirty-five-hundredths dollars ($215.35).

"A general release from all liability in indorsement of note of Eureka Chemical Co. of December 25, 1891, for $2,800.

"A. E. NETTLETON, Personal."

He inclosed this check to respondent in a letter addressed to the cashier, which read as follows:

"DEAR SIR.— Enclosed please find check for $215.35 to cover the amount of my liability on the indorsement of the note given by the Eureka Chemical Co. in 1891. Will you kindly send me a general release from all liability as indorser on this note in acknowledging the check?"

In answer to this he received a letter written by respondent's cashier stating, "Yours * * * received * * * enclosing check which you state is to cover amount of your liability as indorser. * * * Now this is just about one-half of the amount unpaid on the note, and we shall be glad to deliver the note to you or to Mr. A. E. Dewey, or some one entitled to receive it when the whole amount is paid," and as already stated, when Mr. Dewey paid his share the note was delivered up to him.

In the meantime an appeal had been taken by Mrs. Townley from the judgment obtained by respondent setting aside her judgment and levy, and subsequently to the payments

above mentioned respondent's judgment was reversed and it was compelled to refund to or for the benefit of Mrs. Townley the moneys which it had originally received in its action and applied to the partial payment of this note, and then still later this action was brought to recover of Dewey and Nettleton the amount which was left unpaid on the note after such refunding.

It is or must be conceded that this action when brought was barred by the Statute of Limitations unless this result had been prevented by the payments which have been referred to. I think it is clear that such payments were not of such a nature as to operate as an acknowledgment of the remaining balance of indebtedness now sought to be recovered, and, therefore, to prevent the operation of the statute unless, as is claimed by the respondent, Dewey and Nettleton, at the time of making the same, were to be charged with knowledge of the nature, condition and possibilities of the Townley litigation and appeal; that the note had been partly paid with proceeds of that litigation under a judgment which might be reversed and an additional amount of indebtedness on the note revived, and that, therefore, their payments, although expressed to be in full, were still subject to the condition and understanding that they might be called on to make further payments in such contingency. I shall consider first this claim of the respondent that they were chargeable with such knowledge and assumed such contingency, and then, if such claim seems to be unfounded, the other proposition that the payments did not operate to prevent the statute from running.

It is unnecessary now to consider the question whether Dewey and Nettleton, although knowing of the Townley litigation and its past results and future possibilities, might not so make their payments in full satisfaction of their liability as to exclude any recognition or acknowledgment of any further indebtedness, and, therefore, render them ineffectual to stay the running of the statute. Of course, it is not suggested that part payment would satisfy an indebtedness. The query simply is whether a payment, even though it

proves to be partial, may not be so made as to exclude any acknowledgment of further liability whereby the force of the statute will be suspended.

The disposition of this appeal may be based on evidence showing lack of such knowledge and understanding. While there was some testimony which might have permitted a jury to say that Mr. Dewey understood the situation so far as the Townley litigation was concerned, and, therefore, must have understood when he made his payments that the satisfaction by him through them of all of his liability on the note was dependent on the bank's maintaining its judgment against the Townleys, there is much force in the claim that there was sufficient evidence leading to a different conclusion, so that the appellant Dewey was entitled to have the jury pass on this question of his knowledge and understanding. I feel compelled to conclude, however, that this court on the former appeal on a record substantially the same as the present one so far as it relates to Mr. Dewey did decide that he had such information, knowledge and understanding as placed his payments in the category of ordinary partial payments on an indebtedness and prevented the operation of the statute in his favor, and that, therefore, we are foreclosed on this question so far as his representative is concerned.

The situation, however, is entirely different so far as the appellant Nettleton is concerned. On the former trial he was not called as a witness as he was on the last trial. On the record as it now stands, in my opinion, there is not only no evidence to show that Mr. Nettleton so knew about the Townley litigation that he must be assumed to have made his payments subject to the condition and with the understanding that that Townley litigation might eventually go against the bank and he be compelled to make up a further deficiency and balance, but, on the other hand, the undisputed evidence is that he did not have any such knowledge or understanding. Mr. Nettleton was a director of the Chemical Company on an insignificant holding of twenty shares of stock, and he lived in Syracuse while the note was held and

the seat of the litigation with reference to it was in Watertown. In the most positive terms and without contradiction he testified that he knew absolutely nothing of the suit brought by the respondent against the Chemical Company or of the suit brought against Mrs. Townley, or that any proceeds of that litigation had been applied in reduction of the note when he made his payments, and that he understood that his first payment of $126.88 was the balance of his liability on the note as indorser, and that again when he made the second payment necessitated by the default of the other indorsers he understood that it was in full discharge of his indebtedness and that he would be relieved from further liability. Stress is laid on the statement in his evidence that "Mr. Dewey was managing this matter for me and the other indorsers and I trusted him." The other testimony, however, makes it perfectly clear what this means and that it did not mean that he made his payments through Mr. Dewey as a general agent and that, therefore, he was to be charged with any knowledge which Mr. Dewey might have had about the Townley litigation. It appears that Mr. Dewey, who lived in Watertown, looked after the balance claimed to be due on the note and that Mr. Nettleton conferred with him about apportioning to the different indorsers their respective amounts of this indebtedness and about cleaning the matter up. There is not the slightest evidence that Mr. Dewey acted as agent for Mr. Nettleton in respect to the Townley litigation or that, if he knew, he ever informed the latter that the payments he was making were of a balance based on the application of the proceeds of that litigation. Neither of Mr. Nettleton's payments was made through Mr. Dewey but each one was made by him directly to the respondent. It is possible that when Mr. Nettleton made his first payment he was to be charged with knowledge that such payment was on the basis of an apportionment amongst six indorsers and that if any one failed to pay his share he would be compelled, as he subsequently did, to pay his share of any deficiency caused by such default. But, subject to this, it is

perfectly evident that he made his payments with no other idea, understanding or expectation than that each one at the time it was made was in full payment and settlement of any liability on the note in question.

This being so, it seems apparent that they were not partial payments whereby was acknowledged a remaining indebtedness, and wherefrom could be inferred such a new promise to pay such remaining indebtedness as canceled up to that date the running of the statute.

The fundamental principle underlying the theory that a payment operates against the statute is that it is a partial payment and that it acknowledges the existence of a balance of indebtedness still to be paid, and no case has been cited, or as I believe can be cited, holding that where a debtor has made a payment in full of his indebtedness it operates to prevent the running of the statute as against some balance, which through some contingency not known or understood by him, may still exist or thereafter be brought into existence. It is of no materiality that the appellant might or even should have learned about the Townley litigation, and that in case of the reversal of the respondent's judgment there would be an unpaid balance on the note. No consideration of duty or negligence or even of blindness to the facts is involved. The simple question is whether he made his payments with the understanding and intent that thereby his liability should be paid in full and extinguished. If he did this, then certainly the payments did not amount to an acknowledgment of further indebtedness and prevent the running of the statute. That he did so do is established beyond controversy.

The principles which govern this subject are too fundamental and well settled to be obscure or doubtful. There is no need to make extensive citations of authorities which have declared them. It will be sufficient to quote what was written by Judge EARL in *Crow* v. *Gleason* (141 N. Y. 489, 493). He said : " In order to make a money payment a part payment within the statute, the burden is upon the creditor to show that it was a payment of a portion of the admitted debt, and

that it was paid to and accepted by him as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder. Part payment of a debt is not of itself conclusive to take the case out of the statute. In order to have that effect it must not only appear that the payment was made on account of a debt, but also on account of the debt for which action is brought, and that the payment was made as a part of a larger indebtedness, and under such circumstances as warrant a jury in finding an implied promise to pay the balance. If it be doubtful whether the payment was a part payment of an existing debt, more being admitted to be due, or whether the payment was intended by the party to satisfy the whole of the demand against him, the payment cannot operate as an admission of a debt so as to extend the period of limitation. If there be a mere naked payment of money without anything to show on what account, or for what reason the money was paid, the payment will be of no avail under the statute. The payment must be made under such circumstances as to show a recognition of a larger debt remaining unpaid."

The judgment should be reversed as to the appellant Nettleton and a new trial granted, with costs to abide event.

CULLEN, Ch. J., EDWARD T. BARTLETT, WILLARD BARTLETT and CHASE, JJ., concur with HAIGHT, J.; VANN, J., concurs with HISCOCK, J.

Judgment affirmed.